THE MEDICAL PROFESSIONAL MUTUAL INSURANCE COMPANY, et al., Plaintiffs, Appellants,

v.

BREON LABORATORIES, INC. and Sterling Winthrop, Inc., Defendants, Appellees.

Nos. 97–1654, 97–1837.

United States Court of Appeals, First Circuit.

Heard Jan. 7, 1998.

Argued April 14, 1998.

Edward D. McCarthy, with whom Ann L. Simoneau, McCarthy, Bouley & Barry, Michael E. Mone and Esdaile, Barrett & Esdaile were on brief for appellants.

Peter B. Ellis, with whom Michael P. Boudett and Foley Hoag & Eliot LLP were on brief for appellees.

Before STAHL, Circuit Judge, CYR, Senior Circuit Judge, and SHADUR,* Senior District Judge.

CYR, Senior Circuit Judge.

Dr. Laurence A. Simons and his medical insurer appeal from a district court judgment dismissing as time-barred their contribution claim against Breon Laboratories, Inc. ("Breon"), brought pursuant to the Massachusetts Contribution Among Joint Tortfeasors Act, Mass.Gen.Laws Ann. ch. 231B, §§ 3(c), (d) ("Chapter 231B"). The district court rejected their argument that an earlier state-court judgment, entered against Dr. Simons following a jury verdict, constituted a "judgment" under section 3(c), leaving appellants one year from the time the state-court judgment became final within which to sue Breon for contribution. As no controlling authority exists on the important issue of Massachusetts law presented in this appeal, we elect to certify it to the Supreme Judicial Court of Massachusetts (or "SJC").

In 1984, Carolyn Monaco and her family brought a negligence claim against Dr. Simons in the Massachusetts superior court, alleging that during childbirth she was administered bupivacaine—a painkilling drug manufactured by Breon—intravenously rather than by spinal injection. Although Dr. Simons' medical insurer defended, it did not implead Breon. Almost a decade later, on October 26, 1993, the superior court jury returned a $4 million verdict for the Monacos and judgment thereafter entered on the verdict in accordance with Mass.R.Civ.P. 58(a)(1).

Appellants submitted several post-judgment motions to alter the state-court judgment, thereby tolling the 30-day deadline for filing an appeal. *See* Mass.R.App.P. 4(a) (providing that applicable appeals period recommences upon entry of order on speci-fied postjudgment motions). On March 4, 1994, before the postjudgment motions were decided, appellants settled with the Monacos for roughly $2.5 million. Ten days later, on March 14, the superior court docketed their stipulation of dismissal.

On March 8, 1995, two months before the Monacos were paid the entire $2.5 million settlement amount, appellants initiated the present federal action for contribution, alleging that Breon had not warned Dr. Simons about the dangers attending intravenous injection of bipuvacaine.[1]

In due course Breon moved for summary judgment on the ground that the contribution claim was time-barred under section 3(d)(2) of Chapter 231B:

> If there is no judgment for the injury against the tortfeasor seeking contribution, his right of contribution shall be barred unless he has ... agreed while action is pending against him to discharge the common liability and has within one year after the agreement *paid the liability* and commenced his action for contribution.

Mass.Gen.Laws Ann. ch. 231B, § 3(d)(2) (emphasis added). Accordingly, Breon argued, unless appellants paid the entire $2.5 million to the Monacos and instituted their claim for contribution against Breon by March 4, 1995, the contribution claim was time-barred.

Appellants responded that the superior court entered judgment on the jury verdict October 26, 1993, and therefore that the limitations period prescribed in section 3(d) was supplanted under section 3(c):

> If there is a *judgment* for the injury against the tortfeasor seeking contribution, any separate action by him to enforce contribution must be *commenced within one year after the judgment has become final* by lapse of time for appeal or after appellate review.

*Id.* § 3(c) (emphasis added).

The district court ruled that the October 26 judgment did not qualify as a section 3(c) "judgment." It reasoned that the October 26

* Of the Northern District of Illinois, sitting by designation.

[1]. Appellants also asserted claims based in negligence, breach of warranty, infliction of emotional distress, and unfair or deceptive business practices under Massachusetts General Laws, Chapter 93A.

judgment never became "final," *i.e.*, subject to execution by the Monacos, *see* Mass. R.Civ.P. 62(a), because the 30–day appeal period was tolled by appellants' intervening postjudgment motions. *Medical Prof'l Mut. Ins. Co. v. Breon Labs., Inc.*, 966 F.Supp. 120, 123 (D.Mass.1997). Furthermore, the district court decided that the March 14 stipulation of dismissal did not constitute a section 3(c) "judgment," since such stipulations are routinely entered on the superior court docket without specific judicial direction, hence do not comport with the definition of "judgment" prescribed in Mass.R.Civ.P. 54(a): "the act of the trial court finally adjudicating the rights of the parties." *See id.*[2]

■ The parties agree that the proper interpretation of the term "judgment" appearing in sections 3(c) and 3(d) presents an issue of first impression, not only in Massachusetts but in every jurisdiction whose contribution scheme is founded on the Uniform Contribution Among Tortfeasors Act. We review district court interpretations of Massachusetts law *de novo*. *See Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1220–21, 113 L.Ed.2d 190 (1991).

The interpretation proposed by appellee Breon rests primarily on its contention that the term "judgment" is to be read in light of the context of Chapter 231B, § 1(b), which provides that a contribution plaintiff's [*viz.,* Dr. Simons'] right to contribution "exist[s]" only if he has *paid* more than his *pro rata* share of the joint tortfeasors' common liability to the plaintiffs [*viz.,* the Monacos]. *See* Mass.Gen.Laws Ann. ch. 231B, § 1(b) (emphasis added). Furthermore, Breon argues, since the contribution plaintiff's payment has to have been made pursuant to a judgment *or* a settlement agreement, the reference in section 3(c) to "judgment" must mean that section 3(c) supplies the applicable limitations period only if the contribution plaintiff actually has *paid* the common liability pursuant to a section 3(c) "judgment." Whereas appellants paid the Monacos pursuant to a postjudgment settlement agreement. The Breon

contention raises at least as many questions as it answers.

■ Even if we were to assume that section 3 envisions that the one-year limitations period commenced on the date Simon's right to contribution first came into "exist[ence]," section 1(a) makes clear that appellants' right to contribution arose, if at all, at the time Carolyn Monaco was injured, *see* Mass.Gen. Laws Ann. ch. 231B, § 1(a) ("[W]here two or more persons become jointly liable in tort for the same injury to person or property, there shall be a right of contribution among them even though judgment has not been recovered against all or any of them."), rather than on the date the October 26 judgment became unappealable, and most certainly not on the date appellants finished payment of the $2.5 million to the Monacos. Thus, the section 1(b) payment was not the genesis of appellants' contribution rights, but simply a condition subsequent which enabled appellants to enforce their *preexisting* right to contribution.

Furthermore, the plain language of section 3(c) in no sense conditions its applicability upon the "*payment of* a judgment," but only upon the existence of an unappealable judgment. Although it is clear that an unappealable judgment may be executed upon, *see* Mass.R.Civ.P. 62(a), the language of section 3(c) does not so much as intimate that the one-year limitations period cannot be triggered until an unappealable judgment has been executed. *See Bratcher v. Galusha*, 417 Mass. 28, 627 N.E.2d 908, 910 (1994) (noting that to disregard plain statutory language is to "intrude on the Legislature's function"). Importantly, the plain language of section 3(d), in sharp contrast, prominently identifies "payment" as the event which triggers the one-year limitations periods. *See Harborview Residents' Comm., Inc. v. Quincy Hous. Auth.*, 368 Mass. 425, 332 N.E.2d 891, 895 (1975) ("[S]tatutory expression of one thing is an implied exclusion of other things omitted from the statute.").

Thus, sections 3(c) and 3(d) may connote nothing more than the Legislature's designa-

---

**2.** The district court further held that the Monaco suit settlement released only Dr. Simons, not Breon, and therefore did not satisfy the threshold

§ 3(d) requirement that Dr. Simons demonstrate "common liability" on the part of the joint tortfeasors. *See id.* at 123–24.

tion of discrete, bright-line events which trigger the running of the one-year limitations period for filing contribution claims. Under this view, section 3(c) simply settles upon one of the more readily determinable temporal demarcations in any civil litigation: the entry of an unappealable judgment definitively determining the legal liability of the contribution plaintiff—here, the tort suit defendant, Dr. Simons—to the tort suit plaintiffs—the Monacos.

Since the October 26 judgment unquestionably qualified as a "judgment" under Massachusetts law,[3] the only remaining question is whether some subsequent event rendered it other than a final, unappealable judgment entitled to preclusive effect.

It is clear that the October 26 judgment was not altered by appellants' postjudgment motions, which merely tolled the 30–day period within which to appeal the judgment. *See* Mass.R.App.P. 4(a).[4] Rule 4 simply governs *appellate* procedure following the filing of specified postjudgment motions, by postponing the deadline for appealing from the judgment, without purporting to affect, let alone negate, its status as an appealable "judgment" under Massachusetts Civil Procedure Rule 54(a)(2). In fact, had the superior court acted on appellants' postjudgment motions prior to the March 4 settlement, appellants would have had the right to appeal both the denial of their postjudgment motions *and the October 26 judgment. See, e.g., Fiore v. Washington County Community Mental* *Health Ctr.,* 960 F.2d 229, 234 (1st Cir.1992) (explaining that motions under Rules 50(b), 52(b) and 59 simply "suspend the finality of the original judgment, and the time for appeal from both that judgment and [the] denial of the motions"); *Lyons v. Kinney Syst., Inc.,* 27 Mass.App.Ct. 386, 538 N.E.2d 316, 317 (1989) (parties appeal from both the original judgment and the orders disposing of postjudgment motions); *Marsman v. Nasca,* 30 Mass.App.Ct. 789, 573 N.E.2d 1025, 1029 (1991) (same). Thus, appellants' postjudgment motions simply *suspended* the finality of the October 26 judgment; absent vacatur, however, it was fated to mature into a "final" nonappealable judgment in due course.

Breon nevertheless insists that since the Monacos received $2.5 million pursuant to the settlement agreement and never sought to enforce the $4 million October 26 judgment entered on the jury verdict, the judgment became a nullity. However, nothing in section 3(c) requires that the contribution plaintiff have satisfied the total liability established pursuant to the "judgment," but only that the tort victim's claim have been reduced to a judgment which was not set aside on appeal, *see supra.*

■ More to the present point, the courts have severely restricted the extent to which civil litigants are allowed to "vacate" an appealable judgment "by consent"—that is, by entering into a voluntary postjudgment settlement of the underlying claim. *See gener-*

**3.** Upon a general jury verdict, the clerk of court automatically enters judgment "without awaiting any direction by the court." Mass.R.Civ.P. 58(a)(1). Rule 54(a)(2) defines "judgment" and "final judgment" as "the act of the trial court finally adjudicating the rights of the parties affected by the judgment, ... including ... judgments entered under Rule 58 upon a general verdict of a jury." Mass.R.Civ.P. 54(a)(2).

Rule 54(a) crystallizes the meaning of "judgment" (and "final judgment"), and emphasizes the difference between these terms and the concept of "judgment" under pre-existing Massachusetts practice. Heretofore, "judgment" has meant the last step in the case, which cuts off all appellate review (unless the losing party can successfully press a petition to vacate the judgment). Under the Rules, "judgment" is merely the final adjudicating act of the trial court, and starts the timetable for appellate review. Briefly stated, a case which "went to

judgment" under the old practice was, except in the rarest circumstances, forensically dead; henceforth, a case in which judgment is "entered" is ready for appeal. *See* Rule 58 and Appellate Rules 3 and 4.

Mass.R.Civ.P. 54(a), Reporter's Notes (1973).

**4.** Appellate Rule 4(a) states, in pertinent part: "If a timely motion under the Massachusetts Rules of Civil Procedure is filed in the lower court by any party: (1) for judgment under Rule 50(b); (2) under Rule 52(b) to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; (3) under Rule 59 to alter and amend a judgment; (4) under Rule 59 for a new trial, the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion." Mass.R.App.P. 4(a).

*ally* Jill E. Fisch, *Rewriting History: The Propriety of Eradicating Prior Decisional Law through Settlement and Vacatur,* 76 Cornell L.Rev. 589 (1991); Judith Resnik, *Whose Judgment? Vacating Judgments, Preferences for Settlement, and the Role of Adjudication at the Close of the Twentieth Century,* 41 UCLA L.Rev. 1471 (1994). " 'Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by vacatur.' " *United States Bancorp Mortgage Co. v. Bonner Mall Partnership,* 513 U.S. 18, 26, 115 S.Ct. 386, 392, 130 L.Ed.2d 233 (1994) (citation omitted). If a judgment is rendered moot during an appeal, either through happenstance or unilateral action by the prevailing party, normally the court dismisses the appeal and orders the judgment vacated. *See id.* at 25, 115 S.Ct. at 391 ("A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment.").

■ By contrast, however, if the mooting events are within the control of the nonprevailing party—as through settlement while the case is on appeal—the judgment is not automatically vacated, but remains extant with all the consequences (*e.g., res judicata* ) which would attend an unappealed judgment or a judgment affirmed on appeal. "Where mootness results from settlement, ... the losing party has *voluntarily forfeited* his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur. The judgment is not unreviewable, but simply *unreviewed by his own choice.*" *Id.* (emphasis added); *see Motta v. District Dir. of INS,* 61 F.3d 117, 118 (1st Cir.1995). Although we have been unable to find any Massachusetts case which adopts the *Bancorp* rule, neither can we confidently conclude that the Supreme Judicial Court of Massachusetts would reject its rationale.

Viewed in this light, the March 4 settlement simply dispensed with the need for further litigation between Dr. Simons and the Monacos, neither vacating the October 26 judgment nor precluding its eventual maturation into a final, nonappealable judgment.[5] The ensuing March 14 stipulation of dismissal thus constituted appellants' agreement, *ex mero motu,* to forego their appeal rights in relation to the October 26 judgment, a decision which worked a *de facto* withdrawal of their pending postjudgment motions as well.

Although the district court plausibly assumed that the failure of the Massachusetts superior court to act on appellants' postjudgment motions meant that the suspended 30–day period for appealing the October 26 judgment never recommenced, it is likewise plausible to conclude that the stipulation of dismissal extinguished the temporary suspensory effect of Rule 4, thereby recommencing the running of the 30–day appeal period as of March 14. *See, e.g., Nadeau v. Nadeau,* 10 Haw.App. 111, 861 P.2d 754, 757 (1993) (appellant's withdrawal of Rule–4–type motion recommenced 30–day period for appealing original judgment). Thus, the mere fact that neither the Monacos nor appellants retained the right to appeal from the October 26 judgment under their March 4 settlement agreement did not prevent it from becoming "final by *lapse of time* for appeal."

■ "Absent controlling state court precedent, [we] ... may certify a state law issue to the state's highest court." *VanHaaren v. State Farm Mut. Auto. Ins. Co.,* 989 F.2d 1, 3 (1st Cir.1993). The interpretation of sections 3(c) and 3(d) adopted by the district court is entirely plausible, and yet, as we have sought to point out in this opinion, there is another plausible interpretation. The issue is sufficiently unclear and important and the interests of federalism are such that certification therefore seems appropriate. *See* Mass. S.J.C. Rule 1:03 (authorizing acceptance of certification on claim-determinative

---

**5.** Neither the appellants nor the Monacos moved to set aside the October 26 judgment in accordance with Massachusetts Rule of Civil Procedure 60(b), which permits parties to seek to vacate a judgment that "has been satisfied, released, or discharged, or [for] ... any other reason justifying relief from the operation of the judgment." Mass.R.Civ.P. 60(b)(5), (6).

issues upon which no controlling Commonwealth authority yet exists).

We also think certification is appropriate in light of *Bishop v. Klein,* 380 Mass. 285, 402 N.E.2d 1365 (1980), which interpreted section 3(f) and section 4 of Chapter 231B. There, the plaintiff had obtained a $65,000 verdict against two automobile drivers—Fuller and Klein—who allegedly caused her personal injury. Although Klein pursued an appeal from the judgment, Fuller settled with the plaintiff for $10,000, then moved the superior court to dismiss the cross-claim for contribution which Klein had brought against Fuller. Fuller relied on section 4(b), which provides that if the tort victim enters into a "good faith" settlement with one joint tortfeasor "[i]t shall discharge the [settling] tortfeasor ... from all liability for contribution to any other tortfeasor."

In overturning the superior court decision dismissing Klein's cross-claim against Fuller, the SJC held that a "§ 4(b) [settlement] does not nullify a preexisting judgment." *Id.* 402 N.E.2d at 1371. The SJC specifically cited section 3(f), which states: "The *judgment* of the court in determining the liability of the several defendants to the claimant for an injury shall be *binding* as among the defendants in determining their right to contribution." Mass.Gen.Laws Ann. ch. 231B, § 3(f) (emphasis added). The SJC assumed that the judgment entered on the verdict was "binding" against both Fuller and Klein, notwithstanding that Klein appealed from the judgment. *Id.*

The SJC noted also that its interpretation comported with the competing policies underlying Chapter 231B: to ensure that no joint tortfeasor bear a disproportionate share of the total tort liability, while encouraging expeditious settlements where possible. Since a joint tortfeasor has no incentive to settle with the injured plaintiff *before* judgment, because "he remains open to contribution in an uncertain amount to be determined on the basis of a judgment against another in a suit to which he will not be a party," section 4(b) operates to encourage good-faith *prejudgment* settlements. Once judgment has been entered, however, recognition of postjudgment settlements would countenance "a reversion to the common law view that an injured party may apportion the loss among joint tortfeasors as he sees fit." *Id.* at 1372.

■ Although *Bishop* is factually distinguishable from the instant case, its rationale raises substantial concerns regarding how the SJC would harmonize the term "judgment" in sections 3(c) and 3(f), given the "the traditional rule of statutory construction that, '[w]here the Legislature uses the same words in several sections which concern the same subject matter, the words "must be presumed to have been used with the same meaning in each section." ' " *Clark Equip. Co. v. Massachusetts Insurers Insolvency Fund,* 423 Mass. 165, 666 N.E.2d 1304, 1307 (1996) (citations omitted); *Beeler v. Downey,* 387 Mass. 609, 442 N.E.2d 19, 23 (1982) (same). Section 3(f) employs the term "judgment" to refer to an appealable judgment entered upon a verdict, like the one entered against these appellants on October 26. Although section 3(c) triggers the running of the limitations period as of the date the judgment "has become final by lapse of time for appeal or after appellate review," the *Bishop* case strongly suggests that the Uniform Contribution Among Tortfeasors Act envisions the entry of an appealable judgment on a jury verdict as a pivotal demarcation which conclusively defines the contribution rights among the parties, and contemplates that their respective unilateral actions following judgment would not effect a retroactive annulment of an unvacated judgment.

Thus, we cannot say that the eminently rational interpretation given sections 3(c) & (d) by the district court precludes other reasonable alternatives. By way of example, the two sections may be read together as establishing a workable bright-line distinction between cases in which claims have been reduced to a "judgment" which has not been vacated, *see* Mass.Gen.Laws Ann. ch. 231B, § 3(c), and those cases in which the claims have never been reduced to "judgment," *see id.* § 3(d)(1) & (2). Furthermore, the absence of any judicial precedent in Massachusetts or in any other jurisdiction which has enacted the Uniform Contribution Among Tortfeasors Act likewise inclines us to the

view that the prudent course is to certify to the Supreme Judicial Court of Massachusetts, pursuant to its Rule 1:03, the case-determinative question set forth in the attached certificate. We retain jurisdiction pending its determination.

*So ordered.*

## CERTIFICATION

For the reasons cited in the foregoing opinion, the following question is respectfully certified to the Supreme Judicial Court of Massachusetts: Does the term "judgment," appearing in sections 3(c) and (d) of Mass. Gen.Laws Ann. ch. 231B (the Contribution Among Joint Tortfeasors Act), encompass a judgment entered upon a general verdict, pursuant to Mass.R.Civ.P. 58(a), even though the litigation subsequently is settled pursuant to an agreement between the parties? We welcome whatever further comment the Supreme Judicial Court may care to offer on any other matter of Massachusetts law which it deems pertinent to this appeal.

The clerk of court shall transmit the within opinion to the Supreme Judicial Court of Massachusetts, under the official seal of this court, with the attached certificate and the parties' briefs and appendices.