818                           428 Mass. 818 (1999)

The Medical Professional Mutual Insurance Company *v.* Breon Laboratories, Inc.

THE MEDICAL PROFESSIONAL MUTUAL INSURANCE COMPANY & others[1] *vs.* BREON LABORATORIES, INC., & another.[2]

Suffolk. December 7, 1998. - February 5, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Contribution Among Tortfeasors. Practice, Civil,* Judgment, Agreement for judgment. *Statute,* Construction. *Words,* "Judgment."

The term "judgment," appearing in G. L. c. 231B, §§ 3 (*c*) and 3 (*d*), the contribution among joint tortfeasors act, encompasses a judgment entered upon a general verdict, pursuant to Mass. R. Civ. P. 58 (a), even though the litigation subsequently is settled pursuant to an agreement between the parties. [820-822]

CERTIFICATION of a question of law to the Supreme Judicial Court by the United States Court of Appeals for the First Circuit.

*Edward D. McCarthy (James C. Ruger* with him) for The Medical Professional Mutual Insurance Company & another.

*Peter B. Ellis (Michael P. Boudett* with him) for Breon Laboratories, Inc., & another.

LYNCH, J. This case is here on certification by the United States Court of Appeals for the First Circuit, pursuant to S.J.C. Rule 1:03, as appearing in 382 Mass. 700 (1981). The question certified, which concerns the applicability of certain sections of G. L. c. 231B, the contribution among joint tortfeasors act, is as follows:

[1]The Medical Malpractice Joint Underwriting Association of Massachusetts and Laurence A. Simons.

[2]Sterling Winthrop, Inc. The parties agree that, although the names of the former Breon Laboratories, Inc., and its former parent corporation Sterling Drug, Inc., appear as the nominal defendants, the actual and only defendant in interest is Sanofi Winthrop, Inc., the successor in interest through a complex chain of events to certain assets and liabilities of Breon and Sterling. Sanofi Winthrop, Inc., a Delaware corporation, is a wholly owned subsidiary of Sanofi, Inc., also a Delaware corporation. Sanofi, Inc., is in turn owned by Sanofi, S.A., a French corporation. For the sake of consistency we shall refer to a single defendant (Breon).

"Does the term 'judgment,' appearing in sections 3(c) and (d) of Mass. Gen. Laws Ann. ch. 231B (the Contribution Among Joint Tortfeasors Act), encompass a judgment entered upon a general verdict, pursuant to Mass. R. Civ. P. 58(a), even though the litigation subsequently is settled pursuant to an agreement between the parties? We welcome whatever further comment the Supreme Judicial Court may care to offer on any other matter of Massachusetts law which it deems pertinent to this appeal."

A more detailed factual and procedural history is set forth in *Medical Professional Mut. Ins. Co.* v. *Breon Labs., Inc.,* 141 F.3d 372, 378 (1st Cir. 1998).

The plaintiffs, a physician and his medical insurers, appealed from a United States District Court judgment dismissing their contribution claim against Breon Laboratories, Inc. (Breon). See note 2, *supra.* The Federal District Court ruled that, under G. L. c. 231B, § 3 (*d*), the plaintiffs' contribution claim was time barred.

General Laws c. 231B, § 3 (*c*), provides:

"If there is a judgment for the injury against the tortfeasor seeking contribution, any separate action by him to enforce contribution must be commenced within one year after the judgment has become final by lapse of time for appeal or after appellate review."

General Laws c. 231B, § 3 (*d*), provides in relevant part:

"If there is no judgment for the injury against the tortfeasor seeking contribution, his right of contribution shall be barred unless he has . . . agreed while action is pending against him to discharge the common liability and has within one year after the agreement paid the liability and commenced his action for contribution."

The parties dispute whether a Superior Court jury verdict entered against the physician in October, 1993, is within the term "judgment" as used in these provisions. The parties also dispute whether the subsequent judgment entered on a stipulation of settlement constitutes such a judgment.

After the jury verdict the physician filed several postjudgment motions seeking to amend the judgment. The parties settled the dispute on March 4, 1994, while these motions were still pending and before the expiration of the thirty-day period for

filing an appeal. On March 8, 1995, the plaintiffs filed this contribution action in the Federal District Court. Pursuant to a settlement agreement releasing the physician, a Superior Court judge dismissed the underlying action.

For the following reasons we answer the question, "Yes."

The defendant contends that the Federal District Court judge was correct in concluding that, because the October, 1993, jury verdict was never subject to execution (postjudgment motions were still pending), it was the settlement and its accompanying stipulated dismissal that ultimately terminated the action. The judge further reasoned that, although "a stipulation of dismissal is a 'judgment' for purposes of terminating an action" under Mass. R. Civ. P. 58, as amended, 371 Mass. 908 (1977), "it is not a judgment in the sense of a 'decree . . . of the trial court finally adjudicating the rights of the parties affected.' Mass. R. Civ. P. 54 (a)[, 365 Mass. 820 (1974)]."

Although a judgment entered pursuant to a stipulation of dismissal may not be within the ambit of G. L. c. 231B, § 3 (c), there is no indication in the statute that § 3 (c) requires anything more than the existence of a judgment that is unappealable:

> "If there is *a judgment* for the injury against the tortfeasor seeking contribution, any separate action by him to enforce contribution must be commenced within one year *after the judgment has become final* by lapse of time for appeal or after appellate review" (emphasis added).

As the italicized portion demonstrates, the statute envisions, in the first instance, a judgment that is not yet final. If this condition exists, § 3 (c) then defines the applicable limitations period with reference to the point at which this judgment *becomes* final. Thus, "judgment," as first used in the quoted language, could only have been intended broadly to include judgments which are not yet final.

This interpretation does not conflict with rule 54 (a), which provides in relevant part:

> "The terms 'judgment' and 'final judgment' include a decree and mean the act of the trial court finally adjudicating the rights of the parties affected by the judgment, *including . . . judgments entered under Rule 58 upon a general verdict of a jury . . .*" (emphasis added).

The Reporters' Notes state further:

> "Under the [current] Rules, 'judgment' is merely the final adjudicating act of the trial court, and starts the time-table for appellate review. Briefly stated, a case which 'went to judgment' under the old practice was, except in the rarest circumstances, forensically dead; henceforth, a case in which judgment is 'entered' is ready for appeal."

Reporters' Notes to Mass. R. Civ. P. 54 (a), Mass. Ann. Laws, Rules of Civil Procedure 358 (Lexis 1997).

Neither party disputes that the entry of the October, 1993, judgment commenced the thirty-day period for filing an appeal. That the parties suspended this period through postjudgment motions is of no moment. As the Federal court correctly noted, were the court to decide these motions adversely, the plaintiffs could appeal from both the October, 1993, judgment and the denial of the motions.

In short, the October, 1993, judgment is all that is required by G. L. c. 231B, § 3 (*c*).

Nor does the subsequent dismissal with prejudice mean that the October, 1993, judgment does not meet the requirements of § 3 (*c*). As the Federal court points out, "courts have severely restricted the extent to which civil litigants are allowed to 'vacate' an appealable judgment 'by consent' — that is, by entering into a voluntary postjudgment settlement of the underlying claim. . . . 'Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by vacatur' " (citations omitted). *Medical Professional Mut. Ins. Co.* v. *Breon Labs., Inc.*, 141 F.3d 372, 378 (1st Cir. 1998), quoting *United States Bancorp Mtge. Co.* v. *Bonner Mall Partnership*, 513 U.S. 18, 26 (1994). That none of the parties had moved to set aside the October, 1993, judgment pursuant to Mass. R. Civ. P. 60, 365 Mass. 828 (1974),[3] further persuades us that the judgment, although undoubtedly subject to a release-

---

[3]Rule 60 (b) of the Massachusetts Rules of Civil Procedure, 365 Mass. 828 (1974), provides in relevant part: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment . . . for the following reasons . . . the judgment has been satisfied, released, or discharged . . . ."

based affirmative defense, remained alive for purposes of G. L. c. 231B, § 3 (*c*). Breon concedes as much in its brief, noting that under collateral estoppel principles the October, 1993, judgment would preclude further litigation on issues the jury resolved. A judgment that is sufficiently effective to invoke collateral estoppel is also effective to trigger § 3 (*c*). See *Bishop* v. *Klein*, 380 Mass. 285, 292-293 (1980) (construing "judgment" as used in G. L. c. 231B, § 3 [*f*], to include judgment entered on jury verdict apportioning liability of joint tortfeasors despite one tortfeasor's pending appeal and another's settlement).

We answer the certified question, "Yes."