Cratsley, J.
The plaintiffs seek contribution against defendant Robert E. Wilde (“Wilde”) (Count I) and defendant A.H. Harris & Sons Inc. (“Harris”) (Count II) for sums paid pursuant to the underlying personal injury litigation. The plaintiffs allege that G.L.c. 23 IB, §3(c) entitles them to contribution equal to each defendant’s pro rata share of sums paid to satisfy the underlying judgment. The defendants assert that G.L.c. 231B, §3(d)(2) prohibits the plaintiffs from seeking contribution for sums paid to satisfy a “high-low settlement agreement.” The defendants move for summary judgment pursuant to Mass.R.Civ.P. 56 on all counts. The plaintiffs oppose the defendants’ motion for summary judgment and move for discovery pursuant to Mass.R.Civ.P 56(f). After a hearing and for the reasons set forth below, the plaintiffs’ motion for discovery is DENIED, and defendants’ motion for summary judgment is ALLOWED.
BACKGROUND
On January 6, 1995, at the intersection of West Street and Route 27, both public ways in the town of Medfield, a vehicle operated by the defendant Wilde collided with a vehicle operated by the plaintiff Russell J. Richard (“Richard"). At the time of the collision both Wilde and Richard were engaged on business of their respective employers. Lawrence J. Good (“Good”), a passenger in Wilde’s vehicle, sustained significant personal injuries and resulting damages as a result of the collision.
Good commenced a lawsuit (Norfolk Co. Civil Action No. 97-980) against Richard and his employer, Original Crispy Pizza Crust Co. of Boston, Inc. (“Crispy Crust”), alleging that their negligence caused his injuries and damages.[1] Neither Good nor Richard and Crispy Crust included Wilde or his employer, Harris, as parties to the action. Trial of Good’s civil action commenced against Richard and Crispy Crust in October 1998 and the parties concluded their presentation of evidence on October 8, 1998. After the conclusion of all evidence and prior to submitting the' case to the jury, Good’s attorney and the attorney for Richard and Crispy Crust entered into a “high-low agreement.”[2]
The high-low agreement provided that Richard and Crispy Crust agreed to pay Good a minimum of one million six hundred thousand dollars ($1,600,000.00) and a maximum of three million six hundred thousand dollars ($3,600,000.00) “as full and final settlement of all claims he has or may have in connection with the automobile accident occurring January 6, 1995.”[3] If the jury awarded an amount which, with interest, exceeded $1.6 million, but did not exceed $3.6 million, the agreement provided that Richard and Crispy Crust would pay the judgment awarded by the jury. All parties to the high-low agreement waived their right to appeal.
On October 9, 1998, the jury returned their verdict and pursuant thereto a judgment was entered in favor of Good in the amount of $3.0 million plus costs and *670 interest. Good motioned and received taxation of costs against Richard and Crispy Crust. He also motioned for the issuance of an execution on the judgment. Richard and Crispy Crust satisfied the judgment and then commenced this action against Wilde and Harris for contribution equal to their pro rata shares of the sums already paid to Good.
DISCUSSION
Summary judgment is appropriate when no material facts are in dispute and the moving party is entitled to a judgment as a matter of law. Mass.R.Civ.P. 56(c); Highlands Ins. Co. v. Aerovox, 424 Mass 226, 232 (1997). A moving party which does not bear the burden of proof at trial is entitled to summary judgment if it submits affirmative evidence, unmet by countervailing materials, that either negates an essential element of the nonmoving parly’s case or demonstrates that the nonmoving party has no reasonable expectation of proving an essential element of its case. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
Massachusetts Contribution Among Joint Tortfeasors Act, G.L.c. 23IB
The Massachusetts Contribution Among Joint Tortfeasors Act, G.L.c. 231B, affords a right of contribution in those instances where two or more persons become jointly liable in tort for the injuries sustained by the same person. It also seeks to remedy the unfairness of allowing one of several joint tortfeasors to bear a disproportionate share of the plaintiffs recovery. Haydon v. Coca Cola Bottling Co. of New England, 375 Mass. 644 (1978). “If there is a judgment for the injury against the joint torfeasor seeking contribution, any separate action by him to enforce contribution must be commenced within one year after the judgment has become final by lapse of time for appeal or after appellate review.” G.L.c. 231B, §3(c). If there is no judgment entered against the tortfeasor seeking contribution, his right to contribution shall be barred unless he agreed, while the underlying action was pending against him, to discharge the common liability. G.L.c. 23IB, §3(d)(2). The right of contribution shall exist only in favor of a joint tortfeasor who has paid more than his pro rata share of the common liability, and the tortfeasor’s total recovery shall be limited to the amount paid by him in excess of his pro rata share. G.L.c. 231B, §l(b).
Nature of the High-Low Agreement
The plaintiffs contend that the jury verdict and judgment entered against them on October 9, 1998 satisfies the judgment requirement of c. 231, §3(c). They further contend that Good’s motion for taxation and costs and motion for execution indicate his intent to accept the jury verdict as a judgment. In support of their contentions, the plaintiffs rely on the our Supreme Judicial Court’s (SJC) answer to a certified question in Medical Professional Mut. Ins. Co. v. Breon Laboratories, Inc., 428 Mass. 818 (1999). The defendants, however, assert that the contractual nature of the high-low agreement rendered it a settlement pursuant to c. 23IB, §3(d)(2), and that the language contained within the high-low agreement exemplifies the parties’ intent to settle the dispute. In the absence of local controlling precedent, the defendants rely on precedent from other jurisdictions,[4] which like Massachusetts adopted their statutory framework from the Uniform Contribution Among Joint Tortfeasors Act.[5]
In Medical Professional Mut. Ins. Co. v. Breon Laboratories, 428 Mass. 818 (1999), the parties reached a settlement agreement after the jury returned a verdict for the plaintiff, but prior to the disposition of the plaintiffs motions to amend the judgment and prior to the expiration of the thirty-day period for filing an appeal. Id. at 819-20. Reasoning that judgments are more than the property of private litigants, the SJC stressed the value of judicial precedents and rejected the defendant’s contention that the subsequent settlement agreement and dismissal of a judgment prohibited the plaintiffs from seeking contribution under §3(c). Id. at 821. The SJC held that the term “judgment,” as it appears in §§3(c)(d), encompasses judgments that start the timetable for appellate review, even though the parties subsequently settled the litigation pursuant to an agreement. Id. at 819.
In relying on the analysis in Breon Laboratories, the plaintiffs misinterpret the relationship between the jury verdict in that case and their high-low agreement with Good. Unlike the parties in Breon Laboratories, the plaintiffs entered into their agreement prior to the return of the jury verdict. Furthermore, both the plaintiffs and Good explicitly predicated their acceptance of the jury verdict on a recovery amount falling between $1.6 million and $3.6 million. In Breon Laboratories, the Court cited principles valuing judicial precedent and rejected the contention that a subsequent settlement agreement could prevent a prior judgment from satisfying the statutory requirements of §§3(c)(d). Id. at 821. In this case, the high-low agreement did not seek to modify an existing verdict, but established contractual prerequisitesparameters or boundariesfor the adoption of the jury verdict. Accordingly, the definition of “judgment” in Breon Laboratories does not apply.
The defendants contend that this Court should construe the high-low agreement as a settlement rather than a judgment. The defendants rely primarily on the interpretation set forth in Shafer v. Conk, 532 A.2d 1131 (N. J.Sup.Ct. 1987). In Shafer, the passenger in an automobile accident sued the driver and another motorist involved for personal injuries sustained in the accident. Shafer at 1131. The plaintiff and the driver entered into a high-low agreement by which the plaintiff agreed to accept and the driver agreed to pay a range of damages regardless of a jury verdict above or below those amounts. Id. at 1132. Reasoning that the *671 parties based their agreement on a bargained for exchange, the New Jersey high court found that the high-low agreement constituted a contract based on adequate consideration and that the parties intended to predetermine the issue in dispute. Id. at 1133. The appellate judges concluded that the parties entered into the high-low agreement for the purpose of amicably settling their dispute and, therefore, the high-low agreement should be construed as a compromise or settlement. Id.
The defendants assert that the instant agreement is analogous to the agreement in Shafer. In opposition, the plaintiffs contend that the intentional omission of the phrase “full and final settlement” from section four of the high-low agreement created a contingent settlement with a contingency that never occurred.[6] The plaintiffs further contend that Good’s post verdict motions provide evidence of the parties’ intent to accept the verdict as judgment rather than a settlement. These contentions are not persuasive.
The mere fact that a high-low agreement does not incorporate the word “settlement” or “compromise” does not alter its effect. Power v. Tomarchio, 701 A2d 1371, 1373 (Pa.Super.Ct. 1997). Moreover, a contract between parties, which is based upon adequate consideration and which intends to predetermine issues in dispute, is an arrangement which is contemplated by the term “settlement.” Shafer v. Conk, 220 N.J.Super. 518, 521-22, 532 A.2d 1131, 1133 (1987). Absent the necessity to protect some aspect of the public welfare, “it is in the public interest to allow individuals broad powers to order their affairs through legally binding agreements.” Beacon Hill Civic Ass’n. v. Ristorante Toscano, Inc., 422 Mass. 318, 320-21 (1996) (quoting E.A. Farnsworth, Contracts §5.1, at 345 (2d ed. 1990)).
By conclusively agreeing upon a minimum and maximum amount of liability, the plaintiffs bound themselves to terms of recovery and provided adequate consideration to support a contract. The purpose of this contract/high-low agreement was to establish a mutually agreeable amount for Good’s recovery. The fact that the jury verdict fell within the high-low range did not alter the purpose or essence of the contract/high-low agreement nor did it extinguish the compromises made by the parties. The jury verdict conformed to the terms of the high-low agreement and any post-verdict motions were merely attempts by Good’s attorney to compel compliance with such terms. The contract/high-low agreement contained no illegal elements nor did it impose undue hardship upon either of the parties. Given the contractual nature of the high-low agreement, the intentions of the parties, and the public interest supporting freedom of contract, the high-low agreement at issue in this motion is to be legally construed as a settlement and legally enforced pursuant to its terms.
2. Application of c. 23IB to the High-Low Agreement
The defendants contend that the plaintiffs’ high-low settlement agreement failed to discharge the common liability and therefore it prohibits the plaintiffs from seeking contribution pursuant to c. 23IB, §3(d)(2). Specifically, the defendants allege that the language contained within the high-low agreement constituted a general waiver of liability and lacked the requisite specificity and intent to discharge joint tortfeasors. The defendants rely on precedent established in Cram v. Northbridge, 410 Mass. 800 (1991).
A plaintiffs right to contribution will be barred unless that plaintiff agrees to discharge the common liability during the pendency of the underlying action. G.L.c. 23IB, §3(d)(2). When a release or covenant not to sue or enforce a judgment is given in good faith to one or more persons liable for an injury, it shall not discharge any other tortfeasor from the liability for the injury unless its terms so provide. G.L.c. 23IB, §4(a). "(W]hile it is not necessary for a tortfeasor to be specifically mentioned in the release to be discharged from liability, a tortfeasor will not be discharged unless the parties who negotiated the release so intended.” Cram v. Northbridge, 410 Mass. 800, 804 (1991).
In Cram v. Northbridge, the SJC held that a settlement agreement containing a release discharging “all other persons, firms, or corporations,” absent proof that the parties specifically intended to release a joint tortfeasor, did not prohibit the plaintiff from filing an additional action against that joint tortfeasor. Id. at 801-04. The high court reasoned that upholding such a general release would discharge the liability of tortfeasors who did not contribute to or participate in the settlement and force plaintiffs to surrender causes of action. Id. at 803. The justices concluded that recognizing such general releases would significantly prejudice those plaintiffs who received less than substantial compensation. Id. at 804.
In this case, the high-low agreement provides that, “plaintiff agrees to accept as a full final settlement of all claims he has or may have in connection with the automobile accident occurring on Jan 6, 1995.” This language neither references the defendants nor expresses any intent to discharge the liability of any party other than the plaintiffs. Furthermore, the defendants submitted an affidavit from Good’s attorney attesting to the fact that he intended to discharge the liability of the defendants and no other parties. Thus plaintiffs have not only failed to produce specific evidence that the parties intended to release the common liability, but have also failed to rebut evidence to the contrary. Accordingly, the release of liability in the high-low agreement in question cannot be construed to release common liability for the accident occurring January 6, 1995. Thus the plaintiffs’ claims for contribution are barred pursuant to G.L.c. 23 IB, §3(d)(2).
*672 In the alternative, the plaintiffs urge this Court to depart from the rule of law announced in Cram v. Northbridge and create a limited exception allowing parties who have fully compensated a plaintiff for damages to seek contribution from joint tortfeasors in situations where the statute of limitations has run. The plaintiffs assert that their satisfaction of full compensation and Good’s failure to bring a cause of action against the defendants prior to the expiration of the statute of limitations renders the Court’s reasoning in Cram v. Northbridge inapplicable. The plaintiffs’ reasoning, however, would effectively bind non-party tortfeasors to settlement agreements negotiated without their consent. At the time the plaintiffs entered into the high-low agreement they were fully aware that the statute of limitations had run on any cause of action Good may have had against the defendants. Had the plaintiffs truly intended to seek contribution they could have sought to implead the defendants prior to the trial and settlement of the underlying case. Mass.R.Civ.P. 14(a). By impleading the defendants, the plaintiffs’ claims for contribution would have related back to the original pleadings which were filed in a timely fashion. Mass.R.Civ.P. 15(c); Nutter v. Woodward, 34 Mass.App.Ct. 596, 600 (1993). This court refuses to allow Good’s failure to bring a civil action against the defendants to bind the defendants to a settlement negotiated without their consent or approval. The plaintiffs failed to release the common liability for the accident occurring January 6, 1995 and, as a result, are barred from seeking contribution from the defendants.
ORDER
Based on the foregoing, it is ORDERED that the defendants’ motion for summary judgment is ALLOWED and the plaintiffs motion for discovery is DENIED.

Wilde also filed a suit (Norfolk Superior Civil Action No. 97-785) against Richard and Crispy Crust for injuries he sustained in the collision. Richard and Crispy Crust moved to consolidate C.A. No. 97-980 and C.A. No. 97-785 for purposes of discovery. Good’s lawsuit (C.A. No. 97-980) reached trial separately.

The defendants rely on the affidavit of Good’s attorney, Edward V. Leja, in determining when the parties entered into the high-low agreement. (Affidavit attached to defendants’ motion for summary judgment.) The plaintiffs contend that the defendants’ inclusion of this determination in their statement of undisputed material facts is irrelevant.

Both plaintiffs and defendants acknowledge that the high-low agreement contains the cited language. However, the parties’ interpretations of that language differ dramatically.

See Ratcliff v. Fireboard Corp., 819 F.Supp. 584, 587-88 (W.Dist.Tex. 1992) (high-low agreement constituted final settlement preventing defendants from appealing verdict); Ziegler v. Wendel Poultry Services, Inc., 615 N.E.2d 1022, 1027-30 (Ohio 1993) (high-low agreement constitutes settlement not Mary Carter agreement); Feigener v. Freeman-Oak Hill Health System, 996 S.W.2d 767, 771-73 (Mo.Ct.App. 1999) (high-low agreement constituted settlement and Judgment ordering specific performance of settlement is capable of enforcement); Power v. Tomarchio, 701 A.2d 1371, 1374 (Pa.Super.Ct. 1997) (high-low agreement constitutes settlement despite absence of word “settlement” or “compromise”); Lewis v. Exxon Co., 786 S.W.2d 724, 729-31 (Tex.Ct.App.El Paso 1989) (high-low agreement constituted settlement preventing settling defendant from seeking contribution from non-settling defendant); Shafer v. Conk, 532 A.2d 1131, 1132-33 (N.J.Sup.Ct. 1987) (high-low agreement constituted settlement preventing victim from recovering damages from additional joint tortfeasor above percentage share).

For a list of States adopting the Uniform Contribution Among Joint Tortfeasors Act see M.G.L.A. c. 23 IB.

Paragraph four of the high-low agreement provides: “If jury awards any amount which with interest exceeds $1,600,000.00 but does not exceed $3,600,000.00, the defendants agree to pay the amount of the judgment. ” The previous two paragraphs (paragraphs two and three) provided for the minimum payment of $1.6 million and the maximum payment of $3.6 million. The plaintiffs contend that the use of the phrase “full and final settlement" in paragraphs two and three of the high-low agreement implies an intentional omission of the phrase in paragraph four.