Greco, J.
This is a Dist/Mun. Cts. R A D. A, Rule 8A appeal by plaintiff Steven Galena (“Galena”) of the entry of summary judgment in favor of defendant Commerce Insurance Co. (“Commerce”) on Galena’s G.Lc. 90, §34M claim for Personal Injury Protection (“PIP”) payments for chiropractic services provided to Commerce’s insured. The basis of the summary judgment was that the insured had been in a motor vehicle accident and had entered into a settlement with the other motorist which covered all of his medical bills, including Galena’s.
There was no dispute as to the following: Derek Boyer (“Boyer”), Commerce’s insured, was involved in a two-car accident on March 12,1997. Six days later, he began treatment with Galena, a licensed chiropractor. On that same day, he assigned to Galena all rights he had to any PIP benefits to which he may have been entitled. Despite this assignment, Boyer personally made a claim for PIP benefits to Commerce, and had his attorney file a claim against both the other motorist and the owner of the car he was driving, which was insured by Premier Insurance. At Commerce’s request, Boyer underwent an independent medical examination on July 30, 1997. Following that examination, Commerce notified Galena that its investigation “reveal[ed] that [it was] only responsible for treatment through 07/30/1997.” It would appear that as of July 30, 1997, Commerce had paid $3,747.00 to Galena for Boyer’s chiropractic treatment Boyer continued to be treated by Galena after July 30,1997, and incurred $1,637.00 in bills for the additional services.
In support of its motion for summary judgment Commerce filed a memorandum of law with several attached documents, but did not file any affidavits. The materials filed would seem to indicate that in February of 1998, Boyer’s attorney wrote to Premier Insurance that Boyer would settle his claim against Premier’s insured for $13,500.00, an amount which was represented as including “all medical expenses incurred to date as a result of the accident” In that letter, Boyer’s attorney listed the injuries allegedly sustained, and noted that Boyer had incurred medical bills totaling, as of that date, $6,342.00, of which $5,677.00 was owed to Galena. Two months later, Boyer settled his claim against Premier’s insured for $7'500.00. As part of that settlement, Boyer executed a release whereby he discharged the driver and owner of the other car in the accident, Premier Insurance and “all other persons, firms and corporations from all claims and demands, rights and causes of action of any kind” which he had or would ever have “on account of or in any way growing out of both personal injuries and property damage “resulting or to resulf from the accident of March 12, 1997.
*223 In allowing Commerce’s motion for summary judgment, the trial judge noted: “After hearing and based upon the language of the parties’ release and settlement date 04/13/98, motion is allowed upon finding of no genuine issue of material fact to present to a fact finder for determination.”
1. While a party may move for summary judgment “with or without supporting affidavits,” Mass. R Civ. P., Rule 56(a), Commerce’s claim depended on the courts consideration of the various attachments to its memorandum. Those materials, however, “were not presented to the judge in a form appropriate for consideration” on such a motion. Roe v. Federal Ins. Co., 412 Mass. 43, 44-45 n.4 (1992). This was not a hearsay problem. The assignment, release and letters discussed above were not presented for the judge to consider the truth of the matters asserted within them (see Sanabia v. Travelers Ins. Co., 1999 Mass. App. Div. 46, 48), but only to determine that an assignment was made, a claim denied, a release given, etc. The more fundamental problem, however, was that there was no basis for the judge to conclude that the documents were what they purported to be. Galena had made no admission to that effect[1] No affidavit was attached in which someone in a position to do so attested to the character of these items. They were not “[sjworn or certified copies.” See Rule 56(e). Accordingly, the trial court should not have considered them. Moreover, since the trial court clearly relied on them to grant summary judgment such error was not harmless.
2. Since we suspect that Commerce may be able to present the documents referred to above in appropriate form at any future hearing on a motion for summary judgment, we will address the merits of that motion, assuming that the documents are what they purport to be. In arguing that the trial court correctly awarded it summary judgment, Commerce claims that its insured (Galena’s patient) had released it from any further obligation to pay for his chiropractic care, and that, even if it was not so released, the insured’s claim has been satisfied through the settlement with Premier Insurance. Thus, the argument goes, Galena cannot be considered an unpaid party under the PIP statute, G.L.c. 90, §34M.
By the release signed on April 13, 1998, Boyer (Galena’s patient and Commerce’s insured) in effect released everybody in the world from any claim arising out of his accident However, by that time Boyer had already assigned his claim for PIP benefits to Galena. Therefore, this claim was not his to release on April 13,1998. See Friedberg v. Jablon, 287 Mass. 510, 513 (1934) (assignmentnot to enforce a judgment “divested [the assignor] of all interest” in the claim and pending action and “transferred it to” the assignee; assignor “thereafter was without power to do anything to affect that claim or action.”) Accordingly, Galena was not precluded from bringing a claim on his own behalf. See Ny v. Metropolitan Prop. & Cas. Ins. Co., 51 Mass. App. Ct. 471, 475 (2001) (“Section 34M implicitly authorizes the direct payment of medical expenses by the insurer to the provider; ‘any unpaid party’ — i.e., a provider — has standing to bring an action against the insurer by being ‘deemed a party to a contract with the insurer responsible for payment... of amounts ... due....’ (emphasis added). §34M, 4th par., 3d sentence.”). This is not a situation where a debtor who, without any notice of the assignment, pays the creditor and then finds itself being sued by the creditor’s assignee. See G.L.c. 106, §9-318(1) (a). Premier and its insured are *224 not being sued. This case involves an obligation, contractual in nature, between Galena and Commerce.
Even if the claim had not been assigned, we conclude that the release did not work to discharge a claim by Galena. In so doing, we agree with those jurisdictions that have held that “an automobile accident victim’s general release of a tortfeasor, in the absence of a specific provision which unequivocally includes PIP claims within the terms of the release, does not operate to release an automobile insurer from its obligation to pay PIP benefits to the injured victim.” Cingoranelli v. St. Paul Fire & Marine Ins. Co., 658 P.2d 863, 869 (Colo. 1983). In so holding, the Colorado Supreme Court focused on the different nature of the claims being made. Even though the claims “coincidental[ly]” arose out of the same event, the insured’s claim against the other motorist sounded in tort, while his claim against his PIP insurer sounded in contract Moreover, the following observation by the Colorado Court about that state’s statutory scheme would apply here:
Not only do PIP claims constitute a separate cause of action in contract, but, more important, the [PIP statute] itself dispels any notion that the settlement of a tort claim arising from an automobile accident represents full compensation for PIP claims. By statute any person eligible for PIP benefits cannot maintain an action in tort against the person legally responsible for the injury unless the threshold requirements for damages are established ...; and when a tort action can be maintained, tort recovery excludes losses required to be paid under PIP coverage....
Id.[2] See also Bailey v. Aetna Cas. & Sur. Co., 497 S.W. 816, 820 (Mo. App. 1973) (“It would require a degree of judicial agility, of which we are incapable, to read into this release any intention on the part of the plaintiff to release her claim for medical expenses against Aetna under its policy of insurance.”); Hughes v. State Farm Mut. Auto Ins. Co., 294 So. 2d 398 (Fla. App. 1974). Cf. Davies v. Nationwide Mut. Ins. Co., 417 N.Y.S.2d 387, 389 (1979), where a New York trial court concluded that a general release by an insured which did not reserve the subro-gation rights of his PIP carrier relieved that insurer of any further liability to its insured. However, in Government Emp. Ins. Co. v. Halfpenny, 425 N.Y.S.2d 212, 219 (1980), a different New York trial court concluded that a PIP insurer was not precluded from proceeding against the wrongdoer’s insurer in subrogation where that insurer had actual notice of the potential subrogation claim. While, in this case, there may not have been actual notice to Premier, as an insurance company doing business in Massachusetts it has to be charged with at least constructive knowledge that Boyer’s PIP insurer would ultimately expect to be reimbursed.
While the Massachusetts appellate courts have not specifically addressed this issue, we are inclined to believe they would follow the Colorado approach. The Supreme Judicial Court has noted that “[a]t common law, the discharge of one joint tortfeasor constituted a discharge of all other joint tortfeasors.” Cram v. *225 Northbridge, 410 Mass. 800, 801 (1991), citing Purchase v. Seelye, 231 Mass. 434, 436 (1918). That doctrine “is based on the view that only one cause of action arises from the same tort and that plaintiffs should be prevented from recovering several times for the same injury.” Cram v. Northbridge, supra at 801. However, “[t]he unsoundness of the doctrine of unity of discharge regardless of intent and satisfaction in fact, has been ably and forcefully stated by the commentators for a long time.” Selby v. Kuhns, 345 Mass. 600, 604 (1963). Indeed, it has been abrogated by statute in Massachusetts. See G.Lc. 231B, §4. Thus the type of general release signed by Boyer in this case would not have worked to discharge some tortfeasor jointly liable with the other motorist See Cram v. Northbridge, supra at 803-804 (1991). In such a situation, the Supreme Judicial Court thought the purpose of G.Lc. 231B, §4 would be frustrated if a general release discharged “all unnamed joint tortfeasors who did not contribute to or participate in the settlement in the absence of any proof that the parties who negotiated the release so intended.” The same considerations would apply here. Commerce was not mentioned in the release, and Commerce certainly did not “contribute to or participate in the settlement^’ between Boyer, the other motorist and his insurer.
The case at bar does not involve joint tortfeasors. The Supreme Judicial Court has also recognized that PIP benefits are contractual, and not in the nature of tort damages. Creswell v. Medical West Community Health Plan, Inc., 419 Mass. 327, 331 (1995). Galena’s action against Commerce is thus in contract; Boyer’s claim against the other motorist is in tort In the opinion of the First Circuit Court of Appeals, a general release would not under Massachusetts law, operate to release a joint contractual obligor. In Hermes Automation Technology v. Hyundai Elec. Ind. Co. Ltd., 915 F.2d 739, 745-746 (1st Cir. 1990), the First Circuit concluded that the Massachusetts courts would apply the modern approach reflected in G.L.c. 231B, §4(a) to joint contractual obligors and held that the plaintiffs claim was not released. The Court noted that “[a]s in other questions of contract interpretation, whether the agreement provides for the release of [a party] is generally determined by the intent of the parties to the agreement” Hermes Automation Technology, supra at 746. Assuming the First Circuits assessment of Massachusetts law is correct, which we do, we see no distinction between the effect of a general release on joint contractual obligors or on one contractual obligor and a tortfeasor.
The release not being a bar to Galena’s claim, the issue simply becomes whether he is an unpaid party. That issue turns on what, in fact, the settlement included — a matter which must he resolved at trial. All that is clear is that Boyer made a claim against the other motorist in the amount of $13,500.00 and that the amount he settled for (to wit, $7,500.00) exceeded the $5,677.00 due Galena. However, nothing in the materials presented by Commerce indicates that the $7,500.00 was meant to cover Galena’s bills first, leaving the balance of $1,823.00 to take care of Boyer’s remaining medical bills of $665.00 and any damages for pain and suffering. Indeed, nothing in those materials indicates that the $7,500.00 includes any medical expenses. The settlement amount is very close to the amount of the original claim less all the medicals. To have left the medical bills out of the settlement would have been consistent with the characterization of PIP benefits as a contractual obligation, and not damages. Creswell v. Medical West Community Health Plan, Inc., supra. That Boyer’s attorney referred to Galena’s bill in his claim is inconclusive. He may have done so only to show that the bills had exceeded the threshold necessary to recover for pain and suffering. See G.L.c. 231, §6D. All this will have to be sorted out at trial, along with the *226 issue of whether Commerce was justified in terminating benefits based on the independent medical examination.[3]
Since there remain genuine issues of fact in this case, the trial court’s entry of summary judgment for the defendant is hereby vacated, and this action is returned to the Salem Division of the District Court Department for trial.
So ordered.

 Commerce has argued that by referring to these documents in the proceedings both in the trial court and before this Division, Galena has in effect stipulated to their authenticity. We disagree. We take such references to be part of Galena’s fall back position, i.e., that even if it was not error to consider them, summary judgment should not have been granted to Commerce based upon them.

 Compare Mester v. Barrett, 1995 Mass. App. Div. 38, 39, where we noted that PIP benefits “are statutorily ‘granted in lieu of damages otherwise recoverable by the injured person or persons in tort as a result of an accident occurring within this Commonwealth.’ G.L.c. 90, §34M. The statute establishes an exemption from tort liability.”

 Cf. Belli v. Forsyth, 301 Mass. 203, 206 (1938), where the plaintiff had lent his automobile to relatives who got into an accident and thereafter brought an action seeking damages for personal injuries against the other motorist After the relatives settled their claim, the plaintiff brought suit for damage to the vehicle. The other motorist raised the release signed by the plaintiffs relatives as a defense. The Supreme Judicial Court stated: “[a]t least... it would seem that the defendant must allow that the settlement money was in truth paid and received in full satisfaction for all the damage done to the automobile and not merely in satisfaction for the personal injury and property claims of the [plaintiffs relatives].”