Gardner, J.
The plaintiff, Sandra R. O’Sullivan (“O’Sullivan”), brought this action to recover damages for the alleged breach of contract and G.L.c. 93A violation by the defendant, Hingham Mutual Fire Insurance Company (“Hingham”), in denying her claim for benefits under the “collapse” provision of her businessowners insurance policy, and in failing to a make a reasonable investigation or offer of settlement under G.Lc. 176D before denying liability. The jury returned a verdict in favor of O’Sullivan on the breach of contract claim. The trial judge, who had reserved the G.L.c. 93A issue, also found for O’Sullivan. Hingham appealed.
O’Sullivan owns a single-story building in Greenfield that houses Harper’s Package Store.[1] Near the back of the store is a walk-in beer cooler. The cooler’s wooden floor sits above a dirt-floored crawl space. As early as April, 2003, O’Sullivan noticed a “little space” in the front of the cooler. By September, 2004, she had observed concaving on both sides of the cooler and bowing at the back, and that the space in front had widened.
Sometime in late October, 2004, O’Sullivan arrived at the store to discover that the back of the cooler had fallen through the floor, leaving the floorboards, she testified, “broken straight across and sticking up.” On October 20th, she contacted Hingham and filed a claim under the “collapse” provision of her businessowners insurance policy. The policy, effective from March 18,2004 to March 18,2005, excluded coverage for loss caused by collapse “except as provided in the Additional Coverage for Collapse,” which provided:
Collapse — We’ pay for loss caused by direct physical loss involving collapse of a building or structure or any part of a building or structure *155 caused only by one or more of the following:... b. hidden decay.
Collapse does not include settling, cracking, shrinking, bulging, or expanding.
Hingham sent an adjuster, Edward Popoli (“Popoli”), to inspect the floor on October 22, 2004. Popoli testified that he felt himself “listing” toward the cooler as he approached from the front. Through an opening where the boards had lifted in the back of the cooler, he also observed deterioration and rot. He concluded that the floor had merely “settled,” rather than collapsed. Hingham denied the claim.
In December, 2004, O’Sullivan hired Renaissance Builders to determine what had caused the damage. After cutting openings in the floor, Marvin Moss (“Moss”), the project manager, concluded that there was “extreme rot to the existing floor system” caused by trapped moisture in the crawl space. Renaissance Builders repaired and replaced the cooler floor at a cost of $10,546.00. O’Sullivan forwarded to Hingham pictures of the damage and repairs, together with Moss’ report. Hingham again denied her claim.
O’Sullivan subsequently sent Hingham a G.L.c. 93A letter in June, 2005, alleging violations of G.L.c. 176D, §3(9) (d) and (f), and demanding $10,546.00 in damages. Hingham responded by denying liability, but offering to settle for $3,515.34.[2] O’Sullivan rejected the offer.
In September, 2006, O’Sullivan filed a two-count complaint against Hingham for breach of contract and violation of G.L.c. 93Afor its alleged failure to make a reasonable investigation or offer of settlement of her claim under G.L.c. 176D. Hingham moved for directed verdict on Count I at the close of O’Sullivan’s evidence, which the trial judge denied. Electing not to present evidence, Hingham then renewed its directed verdict motion, which was again denied. The jury returned a special verdict for O’Sullivan on Count I, finding that a “collapse” had occurred within the coverage provided by the policy, and awarded her $5,546.00. As to Count II, the trial judge, who had reserved the G.L.c. 93A issue, stated in a written decision that Popoli had conducted only a “cursory” inspection, and concluded that Hingham had failed to conduct a reasonable investigation under G.L.c. 176D, §3(9)(d). He awarded O’Sullivan $5,550.00 in attorney’s fees.
Following the entry of judgment on November 20, 2007, the trial judge denied Hingham’s motion for judgment notwithstanding the verdict (“judgment n.o.v.”) on the breach of contract claim, and motions for judgment n.o.v. or to alter or amend the judgment as to the judge’s G.L.C. 93A award of attorney’s fees. An amended judgment of $13,764.60, inclusive of costs, fees, and an additional award to O’Sullivan of $375.00 in attorney’s fees, entered on December 28, 2007. This appeal followed.
1. Hingham’s argument that the trial judge erred in denying its motions for directed verdict and judgment n.o.v. on the breach of contract claim is without merit. “In reviewing a ruling on a directed verdict or a judgment notwithstanding the verdict, *156 the question before us is the same: that is, ‘whether “anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.’” Raunela v. Hertz Corp., 361 Mass. 341, 343 (1972), quoting from Kelly v. Railway Exp. Agency, Inc., 315 Mass. 301, 302 (1943).” Doe v. Senechal, 66 Mass. App. Ct. 68, 76 (2006).
The policy here did not define the term “collapse.” “Because the interpretation of the terms of a contract or agreement is a pure question of law, we exercise de novo review over this issue.” Buchanan v. Contributory Retirement Appeal Bd., 65 Mass. App. Ct. 244, 247 n.5 (2005). In the context of insurance contracts, Massachusetts courts have defined “collapse” to include “both a temporal element of suddenness ... and a visual element of altered appearance that comprises a structural collapse, distinct from the degenerative process causing the collapse.” Clendenning v. Worcester Ins. Co., 45 Mass. App. Ct. 658, 660 (1998). See also Driscoll v. Providence Mut. Fire Ins. Co., 69 Mass. App. Ct. 341, 344-345 (2007). Viewing only the evidence most favorable to O’Sullivan, Cormier v. Grant, 14 Mass. App. Ct. 965, 966 (1982), the jury could reasonably have found that the beer-cooler floor had collapsed. As to the temporal element, O’Sullivan testified that, upon arriving at the store in late October, 2004, “I went in and opened the store, and I looked at the cooler and I saw that the back part had collapsed, the back of the cooler, into the floor.” To the question whether that condition was a “drastic change” in the structure of the flooring, she answered “it definitely was.”
As to the visual element of collapse, O’Sullivan testified that the cooler had fallen through the floor, leaving the floorboards “broken straight across and sticking up.” Moss elaborated at trial that, upon first inspecting the damaged floor, “before I even could look underneath, I could just tell from seeing the condition of the floorboards that the floor framing system had snapped through, it had broken.” Further, upon inspecting beneath the floor, Moss added that “[tjhe floor framing system, which is the support for the floor, had deteriorated to the point where it was completely nonviable as any kind of structural — it had no structural value at all. It had rotten through to, you know, you could actually pull it down with your fingers.” This evidence was sufficient to support the trial judge’s denial of Hingham’s motions for directed verdict and judgment n.o.v.[3]
2. Hingham also contests the trial judge’s award of G.L.c. 93A attorney’s fees to O’Sullivan and his denial of its subsequent motions for judgment n.o.v. and to alter or amend the judgment as to that award. Specifically, Hingham asserts that O’Sullivan failed to present evidence that Hingham had failed to conduct a reasonable investigation of her claim under G.L.c. 176D, §3 (9) (d), or that Hingham’s settlement offer had been unreasonable or its liability reasonably clear under §3(9) (f).
*157 Having reserved the G.L.c. 93A claim, the trial judge held a hearing at which he heard arguments from counsel concerning Hingham’s alleged G.L.c. 176D violations. Based on the evidence presented at the jury trial and the arguments of counsel, the judge ruled in a written decision that
[ajfter a cursory inspection, the adjustor [Popoli] determined that the floor was only sagging — it did not collapse. Based on this report the defendant denied the claim.... I find that the defendant... failed to conduct a reasonable investigation of the plaintiffs claim. I further find this to be an unfair settlement practice and a violation of section 2 of 93A and the offer of one-third actual damages [by Hingham] did not constitute single damages. ... Having found that section 2 was violated, plaintiff is entitled to reasonable attorney’s fees.
“We will not disturb a judge’s ultimate finding in a c. 93A claim unless the finding is clearly erroneous or inconsistent with the relevant legal standards.” Clegg v. Butler, 424 Mass. 413, 420 (1997). To prevail in an action for unfair settlement practices under G.L.c. 176D, §3(9) (d), the plaintiff must show that the defendant “refus[ed] to pay claims without conducting a reasonable investigation based upon all available information.” O’Sullivan made no such showing. She presented no evidence, expert or otherwise, of what Popoli had failed to do, or what additional steps he should have taken — in other words, what a reasonable investigation would have entailed. To the contrary, evidence was presented that Popoli spent between 30 and 45 minutes inspecting the outside and inside of the store, inspecting and taking measurements of the cooler, viewing the rot and deterioration beneath the floor through gaps in the raised boards, taking a number of photographs, and collecting a history from O’Sullivan. Far from a “cursory” inspection, the trial judge noted in his findings that Popoli had “much probity and experience” and merely erred in this case.
Further, to prevail under G.L.c. 176D, §3(9) (f), the plaintiff must show that the defendant failed to make a prompt, fair, and equitable settlement offer when liability had become reasonably clear. In determining whether an insurer’s liability was “reasonably clear” for c. 176D purposes, the test is “whether a reasonable person, with knowledge of the relevant facts and law, would probably have concluded, for good reason that the insurer was liable to the plaintiff.” Demeo v. State Farm Mut. Auto. Ins. Co., 38 Mass. App. Ct. 955, 956-957 (1995). In this case, Hingham reasonably relied on advice from its adjustor, Popoli, who had concluded that the cooler floor merely sagged — a condition specifically excluded from the policy’s “collapse” provision. Notwithstanding Hingham’s offer of one-third of O’Sullivan’s demand to “avoid the time and expense of litigation,” Popoli’s advice fairly suggested that Hingham would have a reasonable prospect of success at trial. Liability therefore would not have been reasonably clear.[4]
*158 The finding for O’Sullivan on Count II must be reversed.
Accordingly, the trial court’s judgment for O’Sullivan is vacated. Judgment is to be entered for O’Sullivan on Count I, and for Hingham on Count H.
So ordered.

 O’Sullivan testified that she had acquired the business from her parents in 1984. She sold it a few years later, but has remained an employee.

 Counsel for both O’Sullivan and Hingham asserted at trial, and in their briefs to this Division, that neither was aware of the policy’s $5,000.00 deductible until after Hingham had made, and O’Sullivan had rejected, the $3,515.34 settlement offer.

 In addition to a temporal and visual element, the trial judge instructed the jury that “[a] collapse must result in some significant primary element of the structure being disengaged or falling down so that it no longer is performing its characteristic function in the building.” Clendenning and its progeny impose no such requirement, however, and so we need not rule whether O’Sullivan satisfied this element. Further, any instructional error caused Hingham no prejudice. In fact, the instruction, as given, operated in Hingham’s favor, requiring the jury to find a loss of function in addition to suddenness and change in appearance.

 The jury’s verdict against Hingham does not point to a different conclusion. We measure O’Sullivan’s G.L.c. 176D claim in terms of what Hingham reasonably believed when it made its offer of settlement. See Parker v. D’Avolio, 40 Mass. App. Ct. 394, 402-403 (1996).