Brennan, J.
On March 11,2007, the plaintiff, Lindsey Brown (“Brown”), was traveling as a passenger in a vehicle insured by the defendant, Norfolk & Dedham Mutual Fire Insurance Company (“Norfolk”), when it collided with a second vehicle operated by Johannah McCarthy (“McCarthy”) and insured by USAA Insurance Company (“USAA”). Brown sustained injuries, and incurred $6,402.50 in expenses for medical treatment.
On March 20, 2007, Brown applied to Norfolk for personal injury protection (“PIP”) benefits. As part of its investigation, Norfolk examined Brown under oath on April 26,2007, and examined Patricia Ingram (“Ingram”), the owner of the vehicle in which Brown was a passenger, on May 11,2007. Following its investigation, Norfolk denied Brown’s claim for PIP benefits on June 29,2007. As grounds, Norfolk stated that Brown’s medical expenses were neither reasonable, nor necessary, based on McCarthy’s representation to Norfolk that Brown “physically attacked” her immediately following the accident and thus, inferentially, could not have been injured in the accident and might have been injured instead in the subsequent altercation. Further, Norfolk stated that Brown had failed to cooperate in its investigation by refusing to provide Norfolk with the contact information of one Yelana Torres (‘Torres”), who was simply a person who recommended to Brown that she contact a chiropractor for relief from her injuries.
Brown responded to the denial of her PIP claim with a G.L.c. 93A demand letter on July 11, 2007, alleging violations of G.Lc. 176D, §3 (9) (d), (g), (f), (h), and (n). Norfolk denied liability by letter dated July 19, 2007.
On October 9, 2007, Brown settled her claim against McCarthy and USAA for $5,000.00. As part of the settlement, Brown executed a release in which she discharged McCarthy and USAA “from all claims and demands, rights and causes of *36 action of any kind, including any claims for Bodily Injury or property damage, [Brown] now has or hereafter may have which may exist which are known or unknown to [Brown] at the present time growing out of a motor vehicle accident which occurred on or about March 11, 2007.”[2]
On November 15, 2007, Brown commenced this action by filing a two-count complaint against Norfolk, alleging that it violated (1) G.L.c. 90, §34M in failing to pay $6,402.50 in PIP benefits, and (2) G.L. c. 93A by committing unfair insurance settlement practices in violation of G.L.c. 176D, §3(9) (f).
Norfolk moved for summary judgment in April, 2008, which the trial court denied in July, 2008. A jury trial commenced in February, 2009. The trial court denied Norfolk’s motions for directed verdict at the start of trial, at the close of Brown’s case, and at the close of all the evidence. On February 23,2009, in answer to special questions, the jury found that (1) the automobile accident on March 11,2007 caused Brown’s injuries; (2) Brown incurred $3,036.00 in reasonable and necessary medical expenses; and (3) the accident did not cause Brown any physical or mental pain and suffering.
On April 9, 2009, in a written decision, the court held that Norfolk had violated G.L.c. 90, §34M, not only finding insufficient evidence that Brown was injured from attacking McCarthy, but also finding that Brown’s failure to provide Norfolk with Torres’ contact information did not constitute noncooperation. As to damages, to avoid a double recovery by Brown, the court offset the $3,036.00 found by the jury to be her reasonable medical expenses by $2,000.00. The court reasoned that, pursuant to G.L.c. 231, §6D, Brown would have had to have met a $2,000.00 threshold in reasonable and necessary medical expenses to pursue a bodily injury claim against McCarthy. The court therefore attributed $2,000.00 of Brown’s $5,000.00 settlement with McCarthy and USAA to medical expenses. As a result, on count 1, the court awarded Brown $1,036.00 in damages, plus interest, costs, and $16,000.00 in attorney’s fees.
On count 2, the court held that Norfolk had knowingly and wilfully violated G.L.c. 176D, §3 (9) (f) and G.L.c. 93A by failing to make a reasonable settlement offer when its liability had become reasonably clear. The court awarded Brown double damages in the amount of $2,072.00, plus interest, costs, and $16,000.00 in attorney’s fees. The court limited Brown’s recovery to one count.
On April 9, 2009, judgment entered for Brown in the amount of $2,072.00, plus interest, costs, and $16,000.00 in attorney’s fees, for a total of $18,515.95. Both Norfolk and Brown have appealed.
1. Deduction from jury award. Norfolk argues that the trial court erred in failing to set off completely Brown’s $3,036.00 jury award for medical expenses by the $5,000.00 she received in settlement from USAA. Brown, in contrast, argues that the court erred in applying any of the USAA settlement proceeds as a setoff against the jury award.
“The formula for the measure of damages is a question of law subject to de novo *37 review on appeal.” Renovator’s Supply, Inc. v. Sovereign Bank, 72 Mass. App. Ct. 419, 436 (2008), citing Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co., 445 Mass. 411, 424 (2005). In this case, although the trial judge found that no evidence had been presented at trial as to what the $5,000.00 settlement with USAA was intended to compensate, he found it “reasonable to conclude that the settlement included at least $2,000 of medical expense” given that Brown “had to meet a threshold of $2,000.00 in reasonable and necessary medical expenses in order to pursue a bodily injury claim” against McCarthy. The courfs subsequent deduction of $2,000.00 from the jury award on this ground was error.
The relevant statute, G.L.c. 231, §6D, provides, in pertinent part:
In any action of tort brought as a result of bodily injury... arising out of the ... operation ... or use of a motor vehicle within this commonwealth by the defendant, a plaintiff may recover damages for pain and suffering, including mental suffering associated with such injury, ... only if the reasonable and necessary expenses incurred in treating such injury ... are determined to be in excess of two thousand dollars. ...
The fact that Brown had medical bills in excess of $2,000.00 merely permitted her to sue for pain and suffering damages. Roseme v. Tolbert, 2005 Mass. App. Div. 118, 120. Section 6D does not specifically apply to an automobile tort plaintiffs additional claim for medical expenses. Browning v. Brokvist, 1998 Mass. App. Div. 254, citing Victum v. Martin, 367 Mass. 404, 407-408 (1975).
Further, as was stated in Galena v. Commerce Ins. Co., 2001 Mass. App. Div. 222, “an automobile accident’s victim’s general release of a tortfeasor, in the absence of a specific provision which unequivocally includes PIP claims within the terms of the release, does not operate to release an automobile insurer from its obligation to pay PIP benefits to the injured victim.” Id. at 224, quoting Cingoranelli v. St. Paul Fire & Marine Ins. Co., 658 P.2d 863, 869 (Colo. 1983).[3] In this case, nowhere in the release, or in the typed language on the front of the check, does the language indicate that Brown intended to release her PIP claim against Norfolk.
2. Chapter 93A violation. Norfolk argues that the trial court erred in finding that it had violated, wilfully and in bad faith, G.L.c. 176D, § 3(9) (f) and G.L.c. 93A.
“Resolution of a G.L.c. 93A claim, including the issue of bad faith, depends on a factual determination of the defendants knowledge and intent.” O’Leary-Alison v. Metropolitan Prop. & Cas. Ins. Co., 52 Mass. App. Ct. 214, 217 (2001). “We will not *38 disturb a judge’s ultimate finding in a c. 93A claim unless the finding is clearly erroneous or inconsistent with the relevant legal standards.” O’Sullivan v. Hingham Mut. Fire Ins. Co., 2009 Mass. App. Div. 154, 157, quoting Clegg v. Butler, 424 Mass. 413, 420 (1997).
To prevail in an action for unfair settlement practices under G.L.c. 176D, §3(9) (f), the plaintiff must show that the defendant failed to make a prompt, fair, and equitable settlement offer when liability had become reasonably clear. In determining whether an insurer’s liability was “reasonably clear” for G.L.c. 176D purposes, the test is “whether a reasonable person, with knowledge of the relevant facts and law, would probably have concluded, for good reason that the insurer was liable to the plaintiff.” O’Sullivan, supra, quoting Demeo v. State Farm Mut. Auto. Ins. Co., 38 Mass. App. Ct. 955, 956-957 (1995).
In his written decision, the trial judge noted that Norfolk had advanced two grounds for denying Brown’s claim for PIP benefits on the basis of what Norfolk alleged was Brown’s failure to cooperate, namely, declining to provide Norfolk with Torres’ contact information; and seeking compensation for medical expenses that Norfolk contends were unnecessary and unreasonable based solely on its conclusion that her injuries were caused in a post-accident altercation. The judge’s rejection of these grounds was fully warranted. Regarding noncooperation, the trial court correctly determined that this defense had no support in the record, as there was no evidence presented by Norfolk that Torres was, in fact, a “runner,” see G.L.c. 266, §111C (defining “runner” as person “who, for a pecuniary benefit, procures or attempts to procure a client, patient or customer at the direction of, request of, or in cooperation with a provider whose purpose is to seek to fraudulently obtain benefits under a contract of insurance”), or that Brown alone was in possession of the contact information. Cf. Metlife Auto & Home v. Cunningham, 59 Mass. App. Ct. 583., 590-591 (2003); Rymsha v. Trust Ins. Co., 51 Mass. App. Ct. 414, 417-418 (2001).
Nor did Norfolk’s sources disputing the cause of Brown’s injuries — McCarthy’s deposition testimony and the trial testimony of her passenger, Jalee Matulewicz (“Matulewicz”) — provide a factual basis for concluding that Brown was injured only after the accident. At best, these witnesses confirmed merely that Brown exited Ingram’s vehicle after the collision, and then may have approached and attempted to pull McCarthy from her vehicle. The testimony was not evidence that Brown had sustained no injuries of any kind that would have warranted the treatment she subsequently received.
Norfolk also argues that the trial court erred in finding that it had violated G.L.c. 93A wilfully and knowingly. See Kapp v. Arbella Mut. Ins. Co., 426 Mass. 683, 686 (1998). The trial judge could reasonably have found, however, that Norfolk’s bases for contesting its obligation to pay PIP benefits were insufficient and unreasonable. As the judge’s findings had a basis in the evidence and cannot be pronounced clearly erroneous, its ruling must stand. O’LearyAlison, supra.
3. Attorney’s Fees. After trial, the court awarded Brown $16,000.00 in attorney’s fees. Both parties claim error. Brown’s attorneys, Jonathan D. Bennett (“Bennett”) and Adam J. Basch (“Basch”), submitted affidavits and itemized invoices in support of an award of attorney’s fees, the former seeking $29,353.60 (117.4 hours of work *39 at a rate of $250.00 per hour[4]) and the latter $9,202.00 (42.8 hours at $215.00 per hour). Brown argues that the trial court should have awarded the entire amount sought given the court’s failure to identify which portions of the legal bills submitted were unreasonable. Conversely, Norfolk argues that the attorney’s fee award was excessive given the size of the jury’s award, the “routine” nature of PIP lawsuits, and the fact that Attorney Bennett’s fees were mostly attributed to pretrial tasks.
As the prevailing party on her G.L.c. 90, §34M and G.L.c. 93A claims, Brown was entitled to an award of reasonable attorney’s fees. The guidelines for determining a reasonable attorney’s fee authorized by statute have been set forth in Heller v. Silverbranch Constr. Corp., 376 Mass. 621, 629 (1978), and in Linthicum v. Archambault, 379 Mass. 381, 388-389 (1979). “The amount of a reasonable attorney’s fee... is largely discretionary with the judge, who is in the best position to determine how much time was reasonably spent on a case, and the fair value of the attorney’s services.” Fontaine v. Ebtec Corp., 415 Mass. 309, 324 (1993).
Here, after considering these guidelines, the trial court found that the hourly rate of $215.00 was reasonable in the community given the nature of the matter and the experience of the attorneys involved, but found unreasonable the more than 160 hours of time expended given that Brown’s “financial interest at stake was not a significant figure, and the issues in the case did not reasonably require the efforts of multiple attorneys.” The reasons for the judge’s reduction in the hours requested were warranted. The award was not an abuse of discretion.
4. Errors in trial proceedings. Norfolk also argues that the trial court erred in declining to admit certain evidence; failing to give an instruction warranted by the evidence; improperly bifurcating the PIP and Chapter 93A claims; and failing to conduct a fair trial.
a. Assignment. Norfolk asserts that Brown assigned her right to collect PIP benefits to her medical providers and, thus, had no standing to bring a G.L.c. 90, §34M claim against Norfolk. Norfolk therefore claims error in the trial court’s refusal to admit the purported assignments into evidence, or to instruct the jury as to their effect. We disagree.
“A valid assignment may be made by any words or acts which fairly indicate an intention to make the assignee owner of a claim.” Knight v. Middlesex Ins. Co., 2002 Mass. App. Div. 201, 202, quoting Cosmopolitan Trust Co. v. Leonard Watch Co., 249 Mass. 14, 19 (1924). “The important point is what the purported assignor did and what evidence there was of his intent.” City of Boston v. Aetna Life Ins. Co., 399 Mass. 569, 572 (1987). Whether a document constitutes an assignment presents a question of law, Gow v. Buckminster Hotel, Inc., 336 Mass. 606, 608 (1958), which we review de novo. RCS Group, Inc. v. Lamonica Constr. Co., 75 Mass. App. Ct. 613, 619 (2009).
In City of Boston v. Aetna Life Ins. Co., 399 Mass. 569 (1987), where patients signed forms “authorizing” payment of their health insurance benefits directly to the hospital, the Supreme Judicial Court noted that “the significant word is ‘authorize,’ a word which usually suggests permission or discretion, not a command, a direction, or order” (citations omitted). Id. at 572. Although the Court ultimately held that the *40 authorization constituted an assignment, that determination turned on the last sentence of the authorization in which the patients remained “financially responsible to the hospital for charges not covered by th[e] authorization.” Id. at 572-573. See Knight, supra at 202.
In this case, Norfolk relies on two single-page forms signed by Brown. In the first, entitled “Authorization and Assignment” and signed on March 14, 2006, Brown “authorize [s] payment of any medical benefits to be made solely payable and sent directly” to her chiropractor. In the second, entitled “Authorization, Release and Assignment of Benefits” and signed on March 14, 2007, Brown “authorizes] payment of any medical benefits to be made solely payable and sent directly” to her physical therapist. Despite their titles, neither form can reasonably be read to be an assignment by Brown of her right to collect PIP benefits from Norfolk. See Salafia v. Hanover Ins. Co., Massachusetts Appeals Court, No. 07-P-1021 (July 10, 2008) (title of document not dispositive of assignment inquiry).
b. Insurance Policy. Norfolk argues that the trial court erred in denying its directed verdict motion because, by failing to introduce her automobile insurance policy into evidence, Brown failed to introduce evidence of its terms and, thereby, failed to satisfy her burden of proving coverage under the policy. We disagree.
‘Where... the claim is for PIP benefits under the standard Massachusetts automobile insurance policy, the policy itself is not the only evidence of the terms, conditions and coverage of the compulsory insurance in question.” Sonogram of New England, Inc. v. Metropolitan Property & Casualty Ins. Co., 2002 Mass. App. Div. 68, 70. “The reason is that the standard Massachusetts auto policy is ‘one prescribed by statute, with standard language controlled by the Division of Insurance.’” Id., quoting Jacobs v. United States Fid. & Guar. Co., 417 Mass. 75, 76 (1994). Therefore, dismissal of a PIP claim for failure to introduce the insurance policy is not required where the plaintiff has otherwise established the existence of a Massachusetts automobile policy in effect on the date of the accident. Id. In this case, Norfolk admitted in its answer that the automobile in which Brown was a passenger was insured by Norfolk on the date of the accident.
Taylor v. Hingham Mut. Fire Ins. Co., 2000 Mass. App. Div. 304, relied upon by Norfolk, is not to the contrary. In Taylor, we held that the insurer’s admission in its answer that a homeowner’s policy existed was not sufficient to satisfy the insured’s burden to prove that the loss fell within the insuring clause of the policy. Id. at 305. In this case, we hold only that Norfolk’s admission in its answer that an automobile policy existed was sufficient to establish the terms of the policy relevant to Brown’s PIP claim.
c. Noncooperation Instruction. There is no merit in Norfolk’s argument that the trial court erred in failing to instruct the jury that noncooperation by Brown would bar her claim for PIP benefits. See G.L.c. 90, § 34M (“Noncooperation of an injured party shall be a defense to the insurer in any suit for benefits authorized by this section. ...”). As noted, Norfolk argued that Brown failed to cooperate, first, by lying that she was injured in her PIP claim, and, second, by failing to provide Norfolk with Torres’ contact information.
“A judge need not instruct the jury on every spin that a party can put on the facts.” Boothby v. Texon, Inc., 414 Mass. 468, 484 (1993), citing Mericantante v. Boston & Maine R.R., 291 Mass. 261, 263 (1935). Nor is a judge obligated to give an instruc *41 tion when no evidence was adduced to which the instruction would apply. Drivas v. Barnett, 24 Mass. App. Ct. 750, 754-755 (1987). The trial court correctiy determined that the instructions were not relevant to the facts of this case. Norfolk failed to present any evidence that Torres was, in fact, a “runner,” or that Brown alone was in possession of the contact information. Further, McCarthy’s claim about Brown’s conduct after the accident did not establish that she was not injured in the accident. The jury found that she was, and the question of her injuries was the subject of the first special question submitted to the jury.
d. Bifurcation. At the close of Brown’s case, Norfolk moved for a directed verdict on her G.L.c. 93A claim, arguing that Brown had failed to introduce the demand letter into evidence. The trial court denied the motion, electing instead to bifurcate, sua sponte, the G.L.c. 90, §34M and G.L.c. 93A claims.
Norfolk’s first argument that the trial court may bifurcate only upon motion is without merit. “A court operating under Rule 42 does not require a motion; the judge may act sua sponte.” J.W. SMITH & H.B. ZOBEL, RULES PRACTICE §42.1, at 54 (2d ed. 2007), citing Nautican Realty Co. v. Nantucket Shipyard, Inc., 28 Mass. App. Ct. 902, 903 (1989). See Roddy v. McNulty Ins. Agency, Inc., 16 Mass. App. Ct. 525, 529 (1983) (“[Sjeparation of claims in the conventional c. 93A setting appears more appropriately made under rule 42(b) than under rule 21.”).[5]
Norfolk’s second argument that the trial court otherwise erred in ordering bifurcation is also without merit. The court, “in furtherance of convenience or to avoid prejudice, ... may order a separate trial of any claim.” Mass. R. Civ. R, Rule 42(d). Whether to bifurcate a civil trial rests solely within the discretion of the trial judge. Dobos v. Driscoll, 404 Mass. 634, 645 (1989).
There was no abuse of discretion here. The trial judge permissibly reserved the G.Lc. 93A claim to himself, see W. Oliver Tripp Co. v. American Hoechst Corp., 34 Mass. App. Ct. 744, 753 (1993), and Norfolk has failed to show any prejudicial effect from the judge making this decision after testimony had been presented by Brown solely on her G.L.c. 90, §34M claim. See Larson v. Paley, Massachusetts Appeals Court, No. 00-P-949 (May 14, 2002), quoting Kisteneff v. Tiernan, 514 F.2d 896, 897 (1st Cir. 1975) (“We cannot regard as significant the fact that the decision to split the trial was not made before any testimony was presented. Appellant could not have been prejudiced by the fact that in his case in chief he presented evidence on the issue of damages, and appellee’s case was limited to the question of liability.”).
e. Fair Trial. We find Norfolk’s claim that it was denied a fair trial because the judge was biased to be wholly devoid of merit. In its brief, Norfolk alleges several instances of bias, including the judge’s criticism, outside the presence of the jury, of Norfolk’s counsel’s cross examination of Brown regarding her consultation with a lawyer and with Torres, as well as its ruling precluding Norfolk’s counsel from suggesting that Torres was a “runner” during his closing argument.
We have examined the record and find that the rulings were warranted. Nothing in the record suggests that the judge was partial or biased in his consideration of the *42 issues. Further, we note that, despite alleging bias by the trial judge, Norfolk’s counsel never moved for recusal or a mistrial. Bui v. Vazquez, 1999 Mass. App. Div. 5, 6 (“The absence of such a motion [to recuse or for a mistrial] often indicates that a judge’s comments were not perceived as prejudicial at the time or in the context in which they were made, and is a factor to be considered in assessing the validity and genuineness of a losing party’s later claim of bias” [citation omitted]). See also McCarthy v. Quirk Nissan, Inc., 2009 Mass. App. Div. 159, 164 n.6.
Accordingly, the trial court’s judgment for Brown in the amount of $2,072.00 is vacated. The case is returned to the Springfield Division of the District Court Department for the entry of judgment for Brown in the amount of $6,072.00, plus interest, costs, and attorney’s fees.
So ordered.

 The front of the check also bore the typed notation: “FULL AND FINAL SETTLEMENT OF ANY AND ALL CLAIMS FOR LOSS OF 3/11/07 TO INCLUDE ALL LIENS KNOWN AND UNKNOWN.”

 In Galena, we cited with approval the following observation by the Colorado Court about that state’s statutory scheme: “Not only do PIP claims constitute a separate cause of action in contract, but, more important, the [PIP statute] itself dispels any notion that the settlement of a tort claim arising from an automobile accident represents full compensation for PIP claims. By statute any person eligible for PIP benefits cannot maintain an action in tort against the person legally responsible for the injury unless the threshold requirements for damages are established ...; and when a tort action can be maintained, tort recovery excludes losses required to be paid under PIP coverage.” Id., quoting Cingoranelli, supra.

 In three entries on his itemized invoice, Attorney Bennett inexplicably lists his hourly rate as $251.00, $252.00, and $253.00, respectively.

 Subsection (d) of Rule 42 governs separate trials in the District Court Department. Subsection (b) governs all of other courts. The above-quoted language is identical in both subsections (b) and (d).