Gardner, J.
The defendant, Commerce Insurance Company (“Commerce”), has appealed the judgments entered for the plaintiffs, Jahaira Jucino (“Jucino”) and Isabel Cintron (“Cintron”), on their claims under G.L.C. 176D and G.L.c. 93A arising from Commerce’s alleged unreasonable investigation of their claims for Personal Injury Protection (“PIP”) benefits for chiropractic services.
*286 We summarize the trial judge’s findings and the uncontested facts of record.[3] Millenium Equity Holdings, LLC v. Mahlowitz, 456 Mass. 627, 630 (2010); Northshore Chiropractic v. Commerce Ins. Co., 2010 Mass. App. Div. 168. Jucino owned and operated a motor vehicle that was struck from behind on March 29, 2007 by a vehicle driven by Juan Paulino (“Paulino”). Commerce insured both Jucino’s and Paulino’s vehicles under standard liability policies. On April 2, 2007, Jucino’s counsel, Attorney Jon J. Helpa (“Helpa”), faxed to Commerce a letter of representation and the police report of the accident, which listed Jucino and Paulino as operators, mentioned no passengers, and described the cost to repair each vehicle at more than $1,000.00. On April 3, Attorney Helpa faxed to Commerce a representation letter for Cintron with the same police report.
That same day, April 3, 2007, Commerce received two loss notices from Joseph Cherniak Insurance Agency (“Cherniak Insurance”), the insurance agency for both Jucino and Paulino. While Jucino’s loss notice indicated that she had a passenger and that both were claiming injuries, Paulino’s notice listed no passengers or injuries. Commerce assigned Jucino’s and Cintron’s claims to adjuster Nicole Keller (“Keller”), who devised an “action plan” to contact Paulino for screening, Attorney Helpa for injury and treatment status, and Commerce’s adjuster for Paulino regarding liability and damages. These calls were made by April 6,2007.
On April 11,2007, Jucino’s vehicle was appraised, and the repair cost was estimated at $1,161.34. On April 30, 2007, Commerce received bills, totaling $970.00, from Broad Street Chiropractic (“Broad Street”) for treatment to Jucino from April 4,2007 to April 27,2007.
On May 1,2007, Keller called Attorney Helpa to inquire about his clients’ medical treatment and to ask about formal PIP applications. Attorney Helpa responded that Jucino and Cintron had not yet signed their PIP applications, and that they continued to be treated at Broad Street. That same day, Keller requested that Jucino’s and Cintron’s claims be referred to Commerce’s Special Investigations Unit (“SIU”), and the claims were transferred to SIU adjuster Shane Eldredge (“Eldredge”).
On May 2, 2007, Eldredge sent a letter to Attorney Helpa stating that Commerce had “some concerns” about the information presented regarding the accident; that its investigation had yielded information indicating that the claim may not be covered; that its investigation was ongoing; and that it was reserving all rights and defenses.
Commerce thereafter received Jucino’s and Cintron’s PIP forms, dated May 4, 2007. On May 7, 2007, it also received bills from Broad Street, totaling $740.00, for treatment of Cintron from April 4, 2007 to May 3, 2007. Upon receipt, Commerce sent both Jucino’s and Cintron’s bills to a third-party company who, apparently, provides rate comparisons for insurance companies. That company recommended reductions in payments of $94.09 for Jucino’s bills and $29.15 for Cintron’s.
*287 On May 15, 2007, Attorney Helpa sent a letter pursuant to G.L.c. 93A and G.Lc. 176D to Commerce, asserting that it both failed to pay PIP benefits and issued a reservation-of-rights letter without providing any reason. Eldredge responded in a letter dated May 30, 2007. He stated that Commerce has a duty to its policyholders to investigate thoroughly all claims, and that it maintains an SIU to investigate suspicious claims to combat insurance fraud. Eldredge also responded that he notified Attorney Helpa on May 2,2007 that the claims had been referred to SIU. In addition, there were references in Eldredge’s letter to discussions between Eldredge and Attorney Helpa regarding the plaintiffs’ willingness to submit to an examination under oath; Eldredge suggested that these caused a delay in the investigation. Finally, Eldredge stated that the reservation-of-rights letter informed Attorney Helpa that Commerce had “some concerns” about the claims. He also stated, incorrectly, that he specifically mentioned in the reservation-of-rights letter that one of his concerns was Jucino and Paulino both being insured by Cherniak Insurance. In any event, the response letter added that, in addition to sharing an insurance agency, both Jucino and Paulino were born in 1975, “raising concerns that these parties may know each other.”
On August 27, 2007, in a six-count complaint, the plaintiffs sought damages for their personal injuries resulting from Paulino’s negligence, for Commerce’s breach of contract in failing to pay PIP benefits under Jucino’s policy, and for Commerce’s unfair claims settlement practices in violation of G.Lc. 176D and G.Lc. 93A. Default judgments in favor of the plaintiffs on their negligence claims were entered on May 10, 2009. The parties then filed a joint stipulation of dismissal of the plaintiffs’ PIP claims on October 20, 2009.
A jury-waived trial was held on October 20, 2009 on the remaining G.Lc. 93A claims. In an extended pretrial exchange, the judge and the parties identified the issue before the court, based on the plaintiffs’ complaint and their G.L.c. 93A demand letter, as whether Commerce had violated G.L.c. 176D and G.L.c. 93A between April, 2007, when Commerce received the plaintiffs’ PIP claims, and May, 2007, when it responded to their G.L.c. 93A demand letter without agreeing, or justifying its refusal, to pay their claims. Only Eldredge testified. He stated that, upon receiving the PIP file, he saw “areas of concern,” namely, that neither the police report nor Paulino’s loss notice identified a passenger in Jucino’s vehicle, that the damage to Jucino’s vehicle was minimal, and that both Jucino and Paulino were insured by Cherniak Insurance and were born in the same year. Eldredge also claimed that he “had previously been made aware” that Broad Street was subject to an investigation by the National Insurance Crime Bureau.
The trial court found for the plaintiffs. In a memorandum of decision, the court reasoned that Commerce had received reasonable proof of the fact and amount of the plaintiffs’ chiropractic expenses, and therefore, pursuant to G.L.c. 90, §34M, should either have paid the bills within ten days or provided notice of its intent not to pay with a statement of reasons. Instead, despite his “areas of concern,” Eldredge did “virtually nothing to confirm or dispel his supposed concern that Cintron was a ‘jump-in.’” Nor did he communicate that concern to Attorney Helpa. The court also found that, in the course of its investigation, Commerce failed to follow its own per *288 formance standards in referring the claim to SIU[4]; that Commerce “quickly aborted” its one telephone call to Paulino because of language difficulties; and that Commerce failed to contact either Cherniak Insurance or the officer who filed the police report to determine whether the lack of reference to Cintron was significant. The court concluded that Commerce’s “reliance on what were essentially hunches and its failure to promptly act on them were unfair claims settlement practices and acts in violation of G.L.c. 93A.”
The trial was restricted to the events of April and May, 2007, and there was no evidence of a dollar amount of any monetary loss for that period. The court therefore awarded only nominal damages of $25.00, which he doubled upon finding a lack of good faith. He also awarded Jucino and Cintron $2,500.00 each in attorney’s fees. After denying Commerce’s posttrial motions, separate judgments were entered on March 3, 2010. This appeal followed.
1. Commerce argues that the trial court’s finding that it failed to conduct a reasonable investigation in violation of G.L.c. 176D and G.L.C. 93A exceeded the scope of activities complained of in the demand letter. The requirement of specificity in a demand letter pertains to the practices complained of, not the legal basis for the claim. Casavant v. Norwegian Cruise Line Ltd., 460 Mass. 500, 506 (2011). In this case, the demand letter stated that Commerce had violated G.L.c. 176D and G.L.C. 93A, which prohibit unfair and deceptive acts or practices in the investigation and settlement of claims, by both failing to pay PIP benefits and sending a reservation-of-rights letter without providing a reason. To support the allegation of an unreasonable investigation, the demand letter also noted that the police report indicated an excess of $1,000.00 in property damage to Jucino’s vehicle. The demand letter’s reference to Eldredge’s reservation-of-rights letter was a reference to his statement that the investigation was still “ongoing” because he had unidentified “concerns,” indicated plaintiffs’ concern with Commerce’s unexplained delay, and put Commerce on fair notice of a possible claim for unreasonable investigation under G.L.C. 176D.
2. Commerce asserts error in the trial court’s finding that it failed to conduct a reasonable investigation in good faith in violation of G.L.c. 176D and G.L.c. 93A. “Resolution of a G.L.c. 93A claim, including the issue of bad faith, depends on a factual determination of the defendant’s knowledge and intent.” O’Leary-Alison v. Metropolitan Prop. & Cas. Ins. Co., 52 Mass. App. Ct. 214, 217 (2001). “We will not disturb a judge’s ultimate finding in a c. 93A claim unless the finding is clearly erroneous or inconsistent with the relevant legal standards.” O’Sullivan v. Hingham Mut. Fire Ins. Co., 2009 Mass. App. Div. 154, 157, quoting Clegg v. Butler, 424 Mass. 413, 420 (1997).
To prevail in an action for unfair settlement practices under G.L.c. 176D, §3 (9) (d), *289 plaintiffs must show that the defendant “refus[ed] to pay claims without conducting a reasonable investigation based upon all available information.” In this case, Commerce’s refusal was premised on baseless assumptions. First, Commerce never identified or even remotely suggested how the fact that Jucino and Paulino both used Cherniak Insurance and were born in the same year related to any possible fraud by Jucino or Cintron. Second, despite Commerce’s alleged concern that Cintron was a “jump-in,” no one from Commerce ever contacted the police officer who was at the scene or Cherniak Insurance to confirm whether Cintron was a passenger. Rather, Commerce’s investigation consisted of a single telephone call to Paulino, which was terminated shortly after a language barrier was encountered. Finally, as to Eldredge’s awareness of a National Insurance Crime Bureau alert, Commerce did not include this exhibit in the record appendix. The trial judge found that the alert noted that Broad Street had been purchased by “John E. Maslar, D.C.,” who was reportedly under investigation for possible excessive and fraudulent billing. Eldredge admitted, however, that he never checked during April and May, 2007 whether the chiropractor treating the plaintiffs was the same chiropractor under investigation. In fact, the chiropractors were not the same. The alert had been of possible fraud by a Dr. John “E.” Maslar. The plaintiffs in this case were treated by a Dr. John “F.” Maslar.[5]
3. Commerce argues that the plaintiffs failed to prove injury or loss caused by its inadequate investigation of their PIP claims. General Laws c. 176D, §3(9) and G.L.c. 93A “were enacted to encourage the settlement of insurance claims ... and discourage insurers from forcing claimants into unnecessary litigation to obtain relief.” Chery v. Metropolitan Prop. & Cas. Ins. Co., 79 Mass. App. Ct. 697, 699 (2011), quoting Clegg, supra at 419. In this case, Commerce’s failure either to settle the plaintiffs’ PIP claims or to provide reasons for nonpayment under G.L.c. 90, §34M, together with its failure to conduct a prompt and reasonable investigation under G.L.c. 176D, caused the plaintiffs injury by forcing them to institute litigation. See Hershenow v. Enterprise Rent-A-Car Co. of Boston, 445 Mass. 790, 801 (2006), quoting Aspinall v. Philip Morris Cos., 442 Mass. 381, 401 (2004) (causation established where tortfea-sor’s conduct “could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted”). See also Columbia Chiropractic Group, Inc. v. Trust Ins. Co., 430 Mass. 60, 65 (1999) (unreasonable delay in paying bills submitted under G.L.c. 90, §34M may violate G.L.c. 93A).
4. Commerce argues that the trial court awarded excessive attorney’s fees. As the prevailing parties on their G.L.c. 93A claims, Jucino and Cintron were entitled to awards of reasonable attorney’s fees. The guidelines for determining a reasonable attorney’s fee authorized by statute have been set forth in Heller v. Silverbranch Constr. Corp., 376 Mass. 621, 629 (1978), and in Linthicum v. Archambault, 379 Mass. 381, 388-389 (1979). ‘The amount of a reasonable attorney’s fee ... is largely discre *290 tionary with the judge, who is in the best position to determine how much time was reasonably spent on a case, and the fair value of the attorney’s services.” Fontaine v. Ebtec Corp., 415 Mass. 309, 324 (1993).
In this case, Attorney Helpa submitted two affidavits of attorney’s fees, requesting $18,600.00 and $2,100.00, respectively. Both parties filed memoranda. After hearing and in a written decision, the court found that the hourly rate of $200.00 was reasonable in the community given the nature of the matter and the experience of the attorney involved. He also limited his award only to those efforts related to the plaintiffs’ G.L.C. 93A recovery. After considering the appropriate guidelines, including the limited result obtained by the plaintiffs, the court awarded Jucino and Cintron $2,500.00 each in attorney’s fees.
Commerce’s first argument that the awards of attorney’s fees were excessive because the plaintiffs failed to prove loss or injury is without merit for the above stated reasons. Its second argument that the awards are excessive given that the plaintiffs recovered only nominal damages is also without merit. “ [N] either the amount of the fee, standing alone, nor the relationship between the fee and damages awarded, by itself, is a basis for vacating the fee award.” Killeen v. Westban Hotel Venture, LP, 69 Mass. App. Ct. 784, 796 (2007). Further, we observe that the trial judge focused with sufficient precision on the relationship between the fee requested and the results the litigation achieved. Id. at 795-796.
5. Finally, we find no abuse of discretion in the trial court’s denial of Commerce’s motion to alter or amend the judgment, or for a new trial, on the grounds of the plaintiffs’ failure to prove injury or an unreasonable investigation. An abuse of discretion arises where the court has “failed to exercise an honest and reasonable judgment in accordance with the controlling principles of law.” Hartmann v. Boston Herald-Traveler Corp., 323 Mass. 56, 60 (1948). No such abuse has been shown in this case.
Judgment affirmed.
So ordered.

 Minor and immaterial discrepancies exist between the transcript and trial court’s findings in terms of dates and the specific means of communication between the parties. Unlike the trial judge, this Division has been provided with only three of the seventeen exhibits, which we have no doubt support the court’s recitation of the relevant dates and means of exchange.

 Commerce employs written performance standards promulgated by the Commonwealth Auto Reinsurers through the Division of Insurance under G.L.c. 175, §113. In relevant part, those standards provide that “claims identified as suspicious or suspected fraudulent” should be referred for more detailed special investigation when there are discrepancies that “raise substantial questions of fraud” or when “a combination of minor discrepancies occur which cannot be resolved.”

 Commerce also argues that the trial judge erroneously suggested in his ruling that an insurance company, in issuing a reservation-of-rights letter, responding to a G.L.c. 93A demand letter, or advising a medical provider or claimant of the status of payment of medical bills, must divulge the specific facts underlying its investigation of a claim. It is unnecessary to address this contention in view of the dispositive conclusion of the inadequacies of Commerce’s purported investigation.